# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE CARDINAL HEALTH, INC. DERIVATIVE LITIGATION | Case No. 2:19-cv-2491<br><br>JUDGE SARAH D. MORRISON<br><br>Magistrate Judge Elizabeth A. Preston Deavers |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

Plaintiffs Melissa Cohen, Stanley M. Malone, and Michael Splaine (collectively, "Plaintiffs") move the Court for an Order granting preliminary approval of the proposed settlement set forth in the concurrently filed Stipulation and Agreement of Compromise, Settlement, and Release dated May 25, 2022 (the "Stipulation"), attached hereto as Exhibit 1.

Plaintiffs request that the Court enter the proposed Order Preliminarily Approving Settlement and Authorizing Dissemination of Settlement Notice (the "Preliminary Approval Order") submitted herewith (and agreed to in the Stipulation), which: (i) grants preliminary approval of the Settlement; (ii) approves the form of Notice[1] and Summary Notice attached to the Stipulation as Exhibits C and E; and (iii) sets a time and date for a hearing for the Court to consider final approval for the Settlement and Plaintiffs' requested Fee and Expense Award.

The grounds for the motion are set forth in the accompanying Memorandum and the exhibit attached hereto.

Defendants do not oppose the motion.

---

[1] Unless otherwise indicated, all capitalized terms shall have the same definitions as set forth in the Stipulation.

Dated: May 25, 2022

Respectfully submitted,

| | |
|---|---|
| **KESSLER TOPAZ MELTZER & CHECK, LLP**<br>Lee Rudy<br>Eric L. Zagar<br>Justin O. Reliford<br>280 King of Prussia Road<br>Radnor, PA 19087<br>Phone: (610) 667-7706<br>Fax: (610) 667-7056<br>Email: lrudy@ktmc.com<br>Email: ezagar@ktmc.com<br>Email: jreliford@ktmc.com<br><br>*Plaintiffs' Co-Lead Counsel* | **GIBBS LAW GROUP LLP**<br><br>By: */s/ Mark H. Trouman*<br>　　Mark H. Troutman (0076390),<br>　　　Trial Attorney*<br>　　Shawn K. Judge (0069493)*<br>　　505 14th Street, Suite 1110<br>　　Oakland, CA 94612<br>　　Phone: (510) 350-9700<br>　　Email: mht@classlawgroup.com<br>　　Email: skj@classlawgroup.com<br>　　*Working from Ohio offices<br><br>*Trial Attorney for Plaintiffs* |
| **GARDY & NOTIS, LLP**<br>James S. Notis<br>Jennifer Sarnelli<br>Meagan A. Farmer<br>126 East 56th Street, 8th Floor<br>New York, NY 10022<br>Phone: (212) 905-0509<br>Fax: (212) 905-0508<br>Email: jnotis@gardylaw.com<br>Email: jsarnelli@gardylaw.com<br>Email: mfarmer@gardylaw.com<br><br>*Plaintiffs' Co-Lead Counsel* | **STRAUSS TROY CO., LPA**<br><br>By: */s/ Richard Wayne*<br>　　Richard S. Wayne (0022390)<br>　　William K. Flynn (0029536)<br>　　Robert R. Sparks (0073573)<br>　　150 E. Fourth Street<br>　　Cincinnati, OH 45202<br>　　Phone: (513) 621-2120<br>　　Fax: (513) 629-9426<br>　　Email: rswayne@strausstroy.com<br>　　Email: wkflynn@strausstroy.com<br>　　Email: rrsparks@strausstroy.com<br><br>*Liaison Counsel for Plaintiffs* |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. PROCEDURAL AND FACTUAL BACKGROUND......................................................... 2

III. ARGUMENT ....................................................................................................................... 6

    A. The Preliminary Approval Standard ........................................................................ 6

    B. The Settlement Is the Result of Good Faith, Arm's-Length Negotiations Among Experienced Counsel with the Assistance of Respected Mediators and Lacks Any Deficiencies ......................................................................................... 8

    C. The Notice Plan Is Appropriate and Should Be Approved .................................... 11

    D. The Agreed-Upon Attorney's Fees and Expenses Are Reasonable ....................... 12

IV. PROPOSED SCHEDULE OF EVENTS ........................................................................... 13

V. CONCLUSION .................................................................................................................. 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bailey v. AK Steel Corp.*,
  No. 1:06-cv-468, 2008 WL 495539 (S.D. Ohio Feb. 21, 2008) ...............................................11

*In re Big Lots Inc. S'holder Litig.*,
  Case No. 2:12-cv-00445-MHW-KAJ (S.D. Ohio Apr. 6, 2018) ...............................................12

*Booth Family Tr. v. Jeffries*,
  No. 2:05-cv-0860-EAS-TPK (S.D. Ohio Nov. 01, 2011) .........................................................12

*Brent v. Midland Funding, LLC*,
  No. 3:11 CV 1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011) ............................................7

*In re Caremark Int'l, Inc. Derivative Litig.*,
  698 A.2d 959 (Del. Ch. 1996) ...................................................................................................10

*Castillo v. Morales, Inc.*,
  No. 2:12-cv-650, 2015 WL 13022263 (S.D. Ohio Aug. 12, 2015) ......................................9, 11

*Connectivity Sys. Inc. v. Nat. City Bank*,
  No. 2:08-cv-1119, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ................................................7

*Cross v. Ledford*,
  120 N.E.2d 118 (Ohio 1954) .....................................................................................................10

*In re Gen. Tire and Rubber Co. Sec. Litig.*,
  726 F.2d 1075 (6th Cir. 1984) ...................................................................................................11

*Griffin v. Flagstar Bancorp, Inc.*,
  No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) .......................................11

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ..................................................................................................................13

*In re Inter-Op Hip Prosthesis Liability Litig.*,
  204 F.R.D. 330 (N.D. Ohio 2001) ..........................................................................................7, 8

*McDannold v. Star Bank, N.A.*,
  261 F.3d 478 (6th Cir. 2001) .......................................................................................................7

*In re McKesson Corp. Derivative Litig.*,
  No. 4:17-cv-01850-CW (N.D. Cal. Dec. 27, 2019) ....................................................................9

*Priddy v. Edelman*,
    883 F.2d 438 (6th Cir. 1989) ...................................................................................8

*In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*,
    No. 08-2260, 2015 WL 11145134 (W.D. Tenn. Nov. 30, 2015) ............................12

*Robinson v. Ford Motor Co.*,
    Nos. 1:04-cv-844, 1:04-cv-845, 2005 WL 5253339 (S.D. Ohio June 15, 2005) ...................1, 6

*In re Se. Milk Antitrust Litig.*,
    No. 2:08-md-1000, 2012 WL 2236692 (E.D. Tenn. June 15, 2012) .........................8

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ..................................................................2, 6

*Tenn. Ass'n of Health Maint. Orgs. v. Grier*,
    262 F.3d 559 (6th Cir. 2001) ...................................................................................7

*UAW v. Gen. Motors Corp.*,
    No. 05-cv-73991-DT, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) .....................8

**Federal Rules**

Fed. R. Civ. P. 23.1(c) ...................................................................................................6

**Other Authorities**

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil* § 1839 (3d ed. Apr. 2022 Update) .................................................7

**MEMORANDUM IN SUPPORT**

**I.   INTRODUCTION**

Plaintiffs Melissa Cohen, Stanley M. Malone, and Michael Splaine (collectively, "Plaintiffs") submit this unopposed motion (the "Motion") for preliminary approval of the proposed settlement (the "Settlement") reached with the Individual Defendants[2] and nominal defendant Cardinal Health, Inc. ("Cardinal" or the "Company") in this shareholder derivative Action. The Settlement provides for the payment of $124 million to Cardinal on behalf of the Individual Defendants. This represents one of the largest cash recoveries in a derivative settlement ever on behalf of an Ohio corporation.

For almost three years, Plaintiffs have engaged in hard-fought litigation seeking to prove that the Individual Defendants breached their fiduciary duties owed to the Company through oversight failures. The Action alleged that the Individual Defendants, each a current or former member of the Cardinal board of directors (the "Board"), acted with reckless disregard for the best interests of Cardinal by allowing Cardinal to distribute prescription opioids without fully adhering to the laws governing the distribution of controlled substances, including the Controlled Substances Act (the "CSA"). Plaintiffs alleged that the Individual Defendants ignored red flags of non-compliance with the CSA and other laws, ultimately causing the Company significant financial exposure and harms from investigations and litigation by federal, state, and local governments.

The Settlement easily satisfies the relatively low threshold required for preliminary approval. *See, e.g., Robinson v. Ford Motor Co.*, Nos. 1:04-cv-844, 1:04-cv-845, 2005 WL

---

[2] Unless otherwise indicated, all capitalized terms shall have the same definitions as set forth in the Stipulation. The Stipulation is attached hereto as Exhibit 1.

5253339, at *3 (S.D. Ohio June 15, 2005) (at preliminary approval stage, court ensures that the "settlement is neither illegal nor collusive" (citation omitted)); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015-16 (S.D. Ohio 2001) (preliminary approval is appropriate where there were non-collusive negotiations and the settlement does not exhibit "obvious deficiencies" (citation omitted)). The Parties reached the Settlement after arm's-length negotiation with the assistance of two well-respected mediators. More fundamentally, the Settlement provides a substantial monetary recovery by the Company, while avoiding the additional expense and uncertainty of continued litigation.

Accordingly, Plaintiffs ask that the Court enter the proposed Order Preliminarily Approving Settlement and Authorizing Dissemination of Settlement Notice ("Preliminary Approval Order") submitted herewith[3], which (i) grants preliminary approval of the Settlement; (ii) approves the form of Notice and Summary Notice attached to the Stipulation as Exhibits C and E; and (iii) sets a time and date for a hearing for the Court to consider final approval for the Settlement and Plaintiffs' requested Fee and Expense Award.

## II. PROCEDURAL AND FACTUAL BACKGROUND

On June 14, 2019, Plaintiff Melissa Cohen filed the first of three derivative lawsuits against current and former members of the Board, with allegations supported by significant public information regarding Cardinal's role in the opioid crisis. (Complaint, ECF. No. 1 at PageID 1). Prior to filing suit, Plaintiff Stanley M. Malone made a demand for the inspection of the Company's books and records pursuant to Ohio Rev. Code § 1701.37 and Ohio common law. After Cardinal produced internal corporate records responsive to the demand, Plaintiff Malone

---

[3] The Preliminary Approval Order is substantially in the form attached to the Stipulation as Exhibit D and has been agreed to by the Parties.

filed a derivative action on December 13, 2019, and Plaintiff Michael Splaine filed a derivative action on January 13, 2020. *See Malone v. Anderson*, No. 2:19-cv-5442 (S.D. Ohio); *Splaine v. Anderson*, No. 2:20-cv-203 (S.D. Ohio).

The Court consolidated the actions on January 28, 2020. (Order, ECF No. 31 at PageID 1567.) On February 11, 2020, the Court appointed Kessler Topaz Meltzer & Check, LLP and Gardy & Notis, LLP as Co-Lead Counsel, Isaac Wiles Burkholder & Teetor, LLC and Strauss Troy Co., LPA as Co-Liaison Counsel, and Mark Troutman, Esq. as Trial Attorney in the Action for Plaintiffs. (Order, ECF No. 34 at PageID 1712.)[4]

Plaintiffs filed a Consolidated Verified Shareholder Derivative Complaint (the "Complaint") on March 12, 2020, based on public information and non-public information obtained through the books and records process by plaintiff Malone. (Consolidated Complaint, ECF No. 35 at PageID 1715.) Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 23.1 (the "Motion to Dismiss"), principally arguing that Plaintiffs failed to state a claim for breach of fiduciary duty or waste, failed to make the required pre-suit demand on the Board, failed to plead with particularity that pre-suit demand was excused, and that certain of Plaintiffs' claims were time-barred. (Motion to Dismiss, ECF No. 43 at PageID 1821.) Plaintiffs and Defendants fully briefed the Motion to Dismiss, and the Court held oral argument on January 21, 2021. (ECF Nos. 43-56).

On February 8, 2021, the Court issued an Opinion and Order granting in part and denying in part the Motion to Dismiss (the "MTD Order"): (i) sustaining Count I of the Complaint alleging Defendants' breach of fiduciary duties to Cardinal; and (ii) dismissing Count II of the Complaint

---

[4] On February 8, 2021, Mr. Troutman joined Gibbs Law Group LLP and remained as Trial Attorney for Plaintiffs in the Action.

alleging corporate waste. (Opinion, ECF No. 58 at PageID 2218.) In sustaining Count I against all Defendants, the Court found the Complaint demonstrated a substantial likelihood of liability as to a majority of the then-current Board, thereby excusing demand. *Id*.

The Court entered a Preliminary Pretrial Order on March 25, 2021, and Cardinal and Defendants each filed Answers to the Complaint. (ECF Nos. 66-82). Defendants denied that any breaches of fiduciary duty had occurred and asserted various affirmative defenses to Plaintiffs' claims. *Id.*

Thereafter, the Parties engaged in extensive discovery. Plaintiffs propounded document requests on Defendants and Cardinal on March 26, 2021, to which Cardinal and Defendants served written responses and objections on June 10, 2021. Plaintiffs also propounded interrogatories on Cardinal on October 28, 2021, to which Cardinal served responses and objections on December 8, 2021. The Parties engaged in numerous meet and confer sessions regarding the discovery sought by Plaintiffs, objections asserted by Defendants, and the scope and parameters of the document production, including relevant custodians, prior discovery efforts and documents collected in connection with the federal multi-district litigation pending before Judge Polster in the U.S. District Court for the Northern District of Ohio (the "MDL"), and other discovery matters. In sum, Cardinal produced to Plaintiffs more than 15 million pages of documents, which included the transcripts of the depositions of certain key fact witnesses and written discovery responses from cases comprising part of the MDL proceedings. Plaintiffs also served requests under applicable federal and state open access laws for documents related to the government actions pending against the Company to the United States Drug Enforcement Agency ("DEA"), as well as the Attorney General Offices in 42 states. In addition, Plaintiffs obtained the trial transcripts from the trial of *City of Huntington v. AmerisourceBergen Drug Corporation*, Case No. 3:17-cv-01362 and *Cabell*

*County Commission v. AmerisourceBergen Drug Corporation*, Case No. 3:17-cv-01665—a bellwether trial in which two West Virginia municipalities sued Cardinal Health and two additional opioid distributors on public nuisance grounds. Plaintiffs devoted enormous efforts to investigate their claims and review and analyze the massive document production provided by Defendants.

On July 21, 2021, Cardinal and the two other major drug distributors in the U.S., McKesson Corporation ("McKesson") and AmerisourceBergen Corporation ("AmerisourceBergen"), announced that they had negotiated a proposed settlement agreement of numerous lawsuits in the MDL litigation that would, if certain conditions were met, settle a substantial majority of the lawsuits filed against them by states and localities related to the distribution of opioids (the "2021 Settlement").[5] Under the 2021 Settlement, Cardinal, McKesson, and AmerisourceBergen agreed to collectively pay up to $21 billion over an 18-year period, with Cardinal reportedly agreeing to pay $6.4 billion of that amount. In addition, the distributors agreed to injunctive relief terms, including compliance and governance reforms to improve the corporations' diversion-related controls and director-level oversight of the same, as well as to provide for greater information sharing and concerted efforts among the distributors to help detect and prevent opioid diversion (the "Governance Reforms").[6] The Governance Reforms became final before the Parties executed the Stipulation in this Action.

---

[5] A copy of the "Injunctive Relief" terms of the "Distributor Settlement Agreement" is attached as Exhibit A to the Stipulation.

[6] By September 4, 2021, 42 states had accepted the 2021 Settlement. By January 26, 2022, 46 states accepted the 2021 Settlement (with one state, New Hampshire, agreeing to settle only as to Cardinal and other distributors) and 90% of the eligible local municipalities had also agreed to join the Settlement. On February 25, 2022, Cardinal and the other distributors each independently determined that there was sufficient participation by states and litigating political subdivisions to proceed with the 2021 Settlement.

Following the announcement of the 2021 Settlement, and as the Parties were deeply involved in the discovery process, the Parties also began preliminary discussions regarding a potential resolution of the Action and agreed to conduct settlement discussions with the help of experienced private mediators.

On December 9, 2021, counsel for Plaintiffs, Defendants, and representatives of Defendants' insurers, participated in a full-day, in-person mediation session in New York City before the Hon. Daniel Weinstein (Ret.) and Jed D. Melnick of JAMS. In advance of that mediation session, the Parties submitted and exchanged detailed confidential mediation statements, addressing liability, causation, damages, and Defendants' affirmative defenses. At the mediation session, the Parties engaged in arm's-length negotiations before agreeing in principle to resolve the Action in return for a cash payment of $124 million to be paid to Cardinal by Defendants' insurers. Following the mediation, the Parties negotiated and agreed upon the Stipulation, which sets for the definitive terms of the Settlement.

### III. ARGUMENT

#### A. The Preliminary Approval Standard

Plaintiffs filed this Action pursuant to Federal Rule of Civil Procedure 23.1, which provides that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23.1(c). At the preliminary approval stage, the Court is required only to determine if the proposed settlement could potentially be given final approval. *See, e.g.*, *Robinson*, 2005 WL 5253339, at *3; *Telectronics*, 137 F. Supp. 2d at 1015-16 ("If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval, then the Court should direct

-6-

that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.") (quoting *Manual for Complex Litig.* § 30.44 (2d ed.1985)). Once the Court grants preliminary approval, notice will be provided to shareholders, and the Court will hold a final fairness hearing to assess the merits of the Settlement and hear any objections. *See Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *12 (N.D. Ohio Sept. 1, 2011) (*citing Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983)). After the final fairness hearing, the Court makes a final determination whether the settlement agreement is "fair, reasonable, and adequate." *Id.*

When seeking approval of a derivative settlement, "cases involving dismissal or compromise under Rule 23(e) of nonderivative class actions . . . are relevant by analogy." 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil* § 1839 at 195 (3d ed. Apr. 2022 Update). The three-step procedure used in class action settlements under Rule 23(e), is thus instructive. In such cases the "(1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) [shareholders] must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable." *Tenn. Ass'n of Health Maint. Orgs. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001) (citing *Vukovich*, 720 F.2d at 920-21); *see also Connectivity Sys. Inc. v. Nat. City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *1 (S.D. Ohio Jan. 26, 2011) (citations omitted).[7] Preliminary approval thus serves as "only the first step in an extensive and searching judicial

---

[7] The Sixth Circuit has recognized that the Court "enjoys wide discretion in evaluating the settlement of derivative actions under Rule 23.1." *McDannold v. Star Bank, N.A.*, 261 F.3d 478, 488 (6th Cir. 2001) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

process[.]" *In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 330, 337-38 (N.D. Ohio 2001).

  **B.**  **The Settlement Is the Result of Good Faith, Arm's-Length Negotiations Among Experienced Counsel with the Assistance of Respected Mediators and Lacks Any Deficiencies**

  A settlement agreement reached through vigorous, arm's-length negotiations among experienced counsel is generally presumed to be fair. *See In re Inter-Op*, 204 F.R.D. at 350-51 (citing *Vukovich*, 720 F.2d at 922-23). "The fact that the plaintiff might have received more if the case had been fully litigated is no reason not to approve the settlement." *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989).

  Here, Plaintiffs are represented by law firms with substantial experience litigating representative shareholder derivative actions. Defendants' counsel are also well-respected and experienced securities litigators. The fact that counsel for both Plaintiffs and Defendants support the proposed Settlement favors preliminary approval. Indeed, "[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement: 'It is . . . well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs.'" *UAW v. Gen. Motors Corp.*, No. 05-cv-73991-DT, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) (citations omitted).

  In addition, the Parties reached the proposed Settlement only after an in-person mediation session lasting late into the night with the assistance of two highly experienced mediators in complex litigation, including similar shareholder actions. This fact also speaks in favor of preliminary approval. *See, e.g.*, *In re Se. Milk Antitrust Litig.*, No. 2:08-md-1000, 2012 WL 2236692, at *4 n.6 (E.D. Tenn. June 15, 2012) (noting that the participation of a "well respected" mediator helps support the court's conclusion that settlement negotiations were made at arm's length).

Moreover, Plaintiffs' settlement negotiations were well-informed by the extensive document discovery record, which included over 15 million pages of Company records and deposition transcripts of key compliance and anti-diversion personnel. The discovery obtained by Plaintiffs included substantial Board-level documents, as well as reports and presentations prepared by third-party advisors to the Company regarding their role in the opioid crisis. Plaintiffs' counsel also reviewed trial transcripts in the bellwether case prosecuted by two West Virginia political subdivisions against Cardinal, McKesson, and AmerisourceBergen. *See City of Huntington v. AmerisourceBergen Drug Corp.*, No. 3:17-cv-01362 (S.D. W.Va.) and *Cabell Cty. Comm'n v. AmerisourceBergen Drug Corp.*, No. 3:17-cv-01665 (S.D. W.Va.). Those actions and the evidence presented therein focused on whether Cardinal and the other distributors' alleged failure to implement necessary anti-diversion controls ultimately created a public nuisance and compensable harms.

In addition, counsel and both mediators were able to rely on their experience with a similar derivative action brought nominally on behalf of McKesson, challenging its officers and directors' oversight of opioid distribution practices and compliance with the CSA. The settlement in that case was approved by Judge Wilken in April 2020 and provided for a cash payment to McKesson of $175 million, as well as certain corporate governance reforms.[8] Based on the relative market shares of Cardinal and McKesson and the relative conduct and various defenses available in each action, this Settlement compares favorably to the McKesson settlement. Accordingly, counsel was able to assess the strengths and weaknesses of the claims here, relative to that similar action, when

---

[8] *See* Stipulation and Agreement of Compromise, Settlement, and Release, *In re McKesson Corp. Derivative Litig.*, No. 4:17-cv-01850-CW (N.D. Cal. Dec. 27, 2019) (ECF No. 203-1 at PageID 16-17 of 123) (describing mediation sessions before Judge Weinstein, Mr. Melnick, and Robert Meyer).

deciding to recommend the Settlement to Plaintiffs. *See Castillo v. Morales, Inc.*, No. 2:12-cv-650, 2015 WL 13022263, at *1 (S.D. Ohio Aug. 12, 2015) (granting preliminary approval where settlement was "result of arms-length negotiations conducted after Class Counsel has adequately investigated the claims and became familiar with the strengths and weaknesses of those claims").

Ultimately, Plaintiffs and their counsel determined that the interests of Cardinal and its shareholders are best served if the Action resolves on the terms of the proposed Settlement, rather than through continued litigation. Plaintiffs and their counsel considered: (i) the substantial financial benefit under the proposed Settlement; (ii) the comprehensive Governance Reforms already secured by the 2021 Settlement that are designed to protect Cardinal and help ensure compliance with the CSA going forward; (iii) the uncertain outcome, inherent delays, and significant risks of continued litigation; and (iv) the desirability of permitting the Settlement to be consummated as provided by the terms of the Stipulation.

Plaintiffs' chances of achieving a better outcome for the Company through continued litigation also strongly speak in favor of preliminary approval. The claims asserted in the Action (i) involve complex factual and legal issues regarding the actions of mostly outside, non-management directors in their oversight of corporate executives and (ii) are notoriously difficult for a shareholder plaintiff to prove at trial. Indeed, the seminal case describing oversight claims under Delaware law described such claims as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l, Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). Absent allegations that Defendants sought to personally profit from the Company's unlawful practices, Ohio law required Plaintiffs to prove to a trial jury by clear and convincing evidence that Defendants recklessly disregarded the best interests in Cardinal. *See Cross v. Ledford*, 120 N.E.2d 118, 123 (Ohio 1954). Thus, in deciding to enter into

the proposed Settlement, Plaintiffs and their counsel weighed the guaranteed recovery of $124 million—one of the largest derivative cash recoveries in history in Ohio—against the risk of losing completely at (or before) trial and failing to recover any money for Cardinal. In addition, the Settlement amount represents a significant portion of the insurance coverage remaining at the time of the mediation.

Accordingly, the Court should preliminarily approve the Settlement as a favorable "compromise which has been reached after the risks, expense and delay of further litigation have been assessed." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 12, 2013) (quoting *Vukovich,* 720 F.2d at 922); *see also Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 495539, at *4 (S.D. Ohio Feb. 21, 2008) ("[C]ourts are particularly likely to defer to the judgment of experienced trial counsel when, as in this case, significant discovery has been completed." (citing *Vukovich*, 720 F.2d at 922-23; *Bronson v. Bd. of Educ.*, 604 F. Supp. 68, 73 (S.D. Ohio 1984))); *see also Castillo*, 2015 WL 13022263, at *1.

### C. The Notice Plan Is Appropriate and Should Be Approved

Notice satisfies the requirements of Rule 23.1 where it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford[s] them an opportunity to present their objections." *In re Gen. Tire and Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (citation omitted). Here, the proposed Notice and Summary Notice adequately apprise the Company's shareholders of the Settlement and afford them the ability to make informed decisions. The Company will file the Notice on a Form 8-K filing with the Securities and Exchange Commission ("SEC") and post the Notice and the Stipulation on the investor relations section of the Company's website. The proposed Notice clearly states what the Action concerns, its procedural history, and summarizes the terms of the Stipulation and its legal effects. The proposed Notice further advises the Company's shareholders of information regarding

Plaintiffs' counsel's application for an award of attorney's fees and expenses, including Plaintiffs' request for service awards, and sets forth the procedures whereby any shareholder may submit an objection to the Settlement and/or the Fee and Expense Award. The Notice further provides the date, time, and place of the Settlement Hearing, as well as contact information for inquiries. The Summary Notice will supplement the Notice and will be published in the national edition of *The Wall Street Journal* and national distribution through *PR Newswire* (or other equivalent national press release service). This comprehensive notice regime is more than sufficient. *See In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, No. 08-2260, 2015 WL 11145134, at *5 (W.D. Tenn. Nov. 30, 2015) (finding a similar notice methodology to be substantively adequate); Order, *Booth Family Tr. v. Jeffries*, No. 2:05-cv-0860-EAS-TPK (S.D. Ohio Nov. 01, 2011) (ECF No. 254 at PageID 4410) (same); Order, *In re Big Lots Inc. S'holder Litig.*, Case No. 2:12-cv-00445-MHW-KAJ (S.D. Ohio Apr. 6, 2018) (ECF No. 120 at PageID 2602) (same).

### D. The Agreed-Upon Attorney's Fees and Expenses Are Reasonable

Assuming the Court preliminarily approves the Settlement, Plaintiffs' request for attorney's fees and expenses will be fully addressed in connection with the briefing on Plaintiffs' motion for final approval of the Settlement. In recognition of the efforts and expenditures of Plaintiffs' Counsel and the substantial benefits conferred upon Cardinal as a result of the prosecution and settlement of the Action, Cardinal has agreed to pay Plaintiffs' Counsel an aggregate Fee and Expense Award of 25% of the Settlement Amount, subject to Court approval. Defendants and Cardinal have likewise agreed, subject to court approval, that each of the named Plaintiffs can receive service awards, not to exceed $2,500, which amounts will be paid exclusively from the Fee and Expense Award, also subject to Court approval. The amount of the agreed-upon Fee and Expense Award is the product of arm's-length negotiations, which took place after agreement on the material terms of the Settlement had already been reached. The U.S. Supreme

Court has endorsed this type of consensual resolution of attorney's fees as the ideal towards which litigants should strive.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee.").

## IV.     PROPOSED SCHEDULE OF EVENTS

Pursuant to the proposed Preliminary Approval Order, the Parties propose the following schedule of events leading to the Settlement Hearing:

| Event | Date |
|---|---|
| Filing the Notice on a Form 8-K filing with the SEC; posting the Notice and Stipulation on the Investor Relations page of the Company's website; publishing the Summary Notice on the *PR Newswire* (or other equivalent national press release service) and in *The Wall Street Journal* | Within ten (10) business days after entry of the Preliminary Approval Order (the "Notice Date"). |
| Filing of papers in support of the Settlement, including the Fee and Expense Award application | At least 35 calendar days prior to the Settlement Hearing. |
| Last day for Cardinal shareholders to submit written objections to the Settlement | At least 21 calendar days prior to the Settlement Hearing. |
| Filing of reply papers in further support of the Settlement, including responses to any objections filed | At least seven (7) calendar days prior to the Settlement Hearing. |
| Settlement Hearing | At the Court's convenience, at least 60 calendar days after the Notice Date. |
| Last day for counsel for Cardinal to file appropriate proof of compliance with respect to dissemination of Notice | At least five (5) business days prior to the Settlement Hearing. |

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court grant preliminary approval of the Settlement, approve the form, substance, and dissemination of the proposed notice plan to Current Company Stockholders, and set forth a schedule for the events described herein.

Dated: May 25, 2022                                          Respectfully submitted,

| | |
|---|---|
| **KESSLER TOPAZ MELTZER & CHECK, LLP**<br>Lee Rudy<br>Eric L. Zagar<br>Justin O. Reliford<br>280 King of Prussia Road<br>Radnor, PA 19087<br>Phone: (610) 667-7706<br>Fax: (610) 667-7056<br>Email: lrudy@ktmc.com<br>Email: ezagar@ktmc.com<br>Email: jreliford@ktmc.com<br><br>*Plaintiffs' Co-Lead Counsel* | **GIBBS LAW GROUP LLP**<br><br>By: */s/ Mark H. Trouman*<br>    Mark H. Troutman (0076390),<br>       Trial Attorney\*<br>    Shawn K. Judge (0069493)\*<br>    505 14th Street, Suite 1110<br>    Oakland, CA 94612<br>    Phone: (510) 350-9700<br>    Email: mht@classlawgroup.com<br>    Email: skj@classlawgroup.com<br>    \**working from Ohio offices*<br><br>*Trial Attorney for Plaintiffs* |
| **GARDY & NOTIS, LLP**<br>James S. Notis<br>Jennifer Sarnelli<br>Meagan Farmer<br>126 East 56th Street, 8th Floor<br>New York, NY 10022<br>Phone: (212) 905-0509<br>Fax: (212) 905-0508<br>Email: jnotis@gardylaw.com<br>Email: jsarnelli@gardylaw.com<br>Email: mfarmer@gardylaw.com<br><br>*Plaintiffs' Co-Lead Counsel* | **STRAUSS TROY CO., LPA**<br><br>By: */s/ Richard Wayne*<br>    Richard S. Wayne (0022390)<br>    William K. Flynn (0029536)<br>    Robert R. Sparks (0073573)<br>    150 E. Fourth Street<br>    Cincinnati, OH 45202<br>    Phone: (513) 621-2120<br>    Fax: (513) 629-9426<br>    Email: rswayne@strausstroy.com<br>    Email: wkflynn@strausstroy.com<br>    Email: rrsparks@strausstroy.com<br><br>*Liaison Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2022, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Mark H. Troutman
Mark H. Troutman (0076390)
mht@classlawgroup.com
*Trial Attorney for Plaintiffs*