## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **IN RE CARDINAL HEALTH, INC. DERIVATIVE LITIGATION** | **Case No. 2:19-cv-2491**<br><br>Judge Sarah D. Morrison<br><br>Magistrate Judge Elizabeth A. Preston Deavers |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
## DERIVATIVE SETTLEMENT AND MEMORANDUM IN SUPPORT

Plaintiffs Melissa Cohen, Stanley M. Malone, and Michael Splaine (collectively, "Plaintiffs") respectfully move the Court for final approval of the settlement of the above-captioned Action (the "Settlement") as set forth in the Stipulation and Agreement of Compromise, Settlement, and Release (ECF No. 100-1 at PageID 3184) (the "Stipulation") and for entry of the [Proposed] Final Judgment and Order Approving Derivative Action Settlement (the "[Proposed] Final Approval Order") (ECF No. 100-3 at PageID 3272), attached as Exhibit A. The [Proposed] Final Approval Order: (i) grants final approval of the Settlement; and (ii) grants approval of the Fee and Expense Award. Defendants do not oppose the relief sought in this motion.

The grounds for this motion are set forth in this Memorandum and supporting declarations.[1]

---

[1] Contemporaneously herewith, Plaintiffs have filed a Joint Declaration of Eric L. Zagar and Jennifer Sarnelli in Support of Plaintiffs' Motion for Final Approval of Derivative Settlement and Application for an Award of Attorneys' Fees and Expenses ("Joint Declaration" and "Joint Decl."). The Joint Declaration attaches additional declarations from each of the Plaintiffs, Plaintiffs' Counsel, the mediators who facilitated the settlement, and David Butler, an opinion witness who provides expert opinion testimony on the reasonableness of the negotiated, unopposed attorneys' fee award.

Dated: August 30, 2022

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Lee Rudy
Eric L. Zagar
280 King of Prussia Road
Radnor, PA 19087
Phone: (610) 667-7706
Fax: (610) 667-7056
Email: lrudy@ktmc.com
Email: ezagar@ktmc.com

*Plaintiffs' Co-Lead Counsel*

**GARDY & NOTIS, LLP**
James S. Notis
Jennifer Sarnelli
Meagan A. Farmer
126 East 56th Street, 8th Floor
New York, NY 10022
Phone: (212) 905-0509
Fax: (212) 905-0508
Email: jnotis@gardylaw.com
Email: jsarnelli@gardylaw.com
Email: mfarmer@gardylaw.com

*Plaintiffs' Co-Lead Counsel*

Respectfully submitted,

**GIBBS LAW GROUP LLP**

*/s/ Mark H. Troutman*
Mark H. Troutman (0076390)*
Trial Attorney
Shawn K. Judge (0069493)*
1111 Broadway, Suite 2100
Oakland, CA 94607
Phone: (510) 350-9700
Fax: (510) 350-9701
Email: mht@classlawgroup.com
Email: skj@classlawgroup.com
*Working from Ohio offices

*Trial Attorney for Plaintiffs*

**STRAUSS TROY CO., LPA**
Richard S. Wayne (0022390)
William K. Flynn (0029536)
Robert R. Sparks (0073573)
150 E. Fourth Street
Cincinnati, OH 45202
Phone: (513) 621-2120
Fax: (513) 629-9426
Email: rswayne@strausstroy.com
Email: wkflynn@strausstroy.com
Email: rrsparks@strausstroy.com

*Liaison Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL AND PROCEDURAL HISTORY ......................................................... 2

    A.    Factual Background ................................................................. 2

    B.    The Litigation.......................................................................... 4

    C.    Mediation and Settlement ....................................................... 5

ARGUMENT ........................................................................................................... 7

I.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED ................................................ 7

    A.    The Substantial Benefits for Cardinal Health Achieved by the Settlement Favor Approval ...................................................... 8

    B.    The Parties' Arm's-Length Mediation Process Favors Approval........................... 9

    C.    The Likelihood of Success, Complexity, Expense, and Duration of Further Litigation Favors Approval ................................... 10

        1.    Risks of Establishing Liability ................................... 11

        2.    Risks of Collectability ............................................... 14

    D.    The Stage of the Litigation Supports Approval ................... 16

    E.    The Support of Plaintiffs and their Experienced Counsel Favor Settlement ........ 16

    F.    The Reaction of Absent Stockholders Favors Final Approval ............................. 17

    G.    The Public Interest Favors Approval ................................... 18

CONCLUSION....................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson* v. *City of Massillon*,
   983 N.E.2d 266 (Ohio 2012)................................................................................11

*Bailey v. AK Steel Corp.*,
   No. 1:06-cv-468, 2008 WL 495539 (S.D. Ohio Feb. 21, 2008) ...................................9, 16, 18

*In re Big Lots, Inc. S'holder Litig.*,
   No. 2:12-cv-445, 2018 WL 11356561 (S.D. Ohio Aug. 28, 2018) .......................................10

*In re Boeing Co. Derivative Litig.*,
   C.A. No. 2019-0907-MTZ (Del. Ch. Feb. 23, 2022).............................................................15

*Bronson v. Bd. of Educ. of the City Sch. Dist. of the City of Cincinnati*,
   604 F. Supp. 68 (S.D. Ohio 1984) .........................................................................17

*In re Cardinal Health, Inc. Derivative Litig.*,
   518 F. Supp. 3d 1046 (S.D. Ohio 2021) (Morrison, J.) ........................................5

*In re Caremark Int'l Inc. Derivative Litig.*,
   698 A.2d 959 (Del. Ch. 1996)..............................................................................12

*City of Birmingham Ret. & Relief Sys. v. Good*,
   177 A.3d 47 (Del. 2017) ......................................................................................13

*Gascho v. Glob. Fitness Holdings, LLC*,
   No. 2:11-cv-436, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014).............................9

*Emps. Ret. Sys. of the City of St. Louis v. Jones*,
   No. 2:20-cv-04813-ALM-KAJ (S.D. Ohio Aug. 23, 2022)....................................8

*In re Gen. Motors Co. Derivative Litig.*,
   C.A. No. 9627-VCG, 2015 WL 3958724 (Del. Ch. June 26, 2015), *aff'd*, 133
   A.3d 971 (Del. 2016) .........................................................................................13

*Granada Invs., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) ..........................................................................7, 18

*Hainey v. Parrott*,
   617 F. Supp. 2d 668 (S.D. Ohio 2007) ...............................................................17

*Horman v. Abney*,
   C.A. No. 12290-VCS, 2017 WL 242571 (Del. Ch. Jan. 19, 2017) ...................13, 14

*In re Keithley Instruments, Inc. Derivative Litig.*,
    599 F. Supp. 2d 875 (N.D. Ohio 2008)............................................................................12, 13

*Kleemann* v. *Carriage Trace, Inc.*,
    No. 21873, 2007 WL 2343756 (Ohio Ct. App. Aug. 17, 2007) ..............................................11

*In re McKesson Corp. Derivative Litig.*,
    No. 4:17-cv-1850-CW (N.D. Cal. Apr. 22, 2020) ...........................................................5, 7, 8

*In re Nat'l Prescription Opioid Litig.*,
    No. 1:17-MD-2804 (N.D. Ohio) ...............................................................................................4

*In re Nationwide Fin. Servs. Litig.*,
    No. 2:08-cv-00249, 2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ....................10, 11, 16, 18

*Olden v. Gardner*,
    294 F. App'x 210 (6th Cir. 2008) ...........................................................................................17

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
    636 F.3d 235 (6th Cir. 2011) ..............................................................................................7, 11

*City of Plantation Police Officerss' Emps.' Ret. Sys. v. Jeffries*,
    No. 2:14-cv-1380, 2014 WL 7404000 (S.D. Ohio Dec. 30, 2014)............................................7

*Rudi v. Wexner*,
    No. 2:20-cv-3068, 2022 WL 1682297 (S.D. Ohio May 16, 2022)....................................10, 17

*Stanley* v. *Arnold*,
    No. 1:12-cv-482, 2012 WL 5269147 (S.D. Ohio Oct. 23, 2012), *aff'd*, 531 F.
    App'x 695 (6th Cir. 2013) .......................................................................................................11

*In re Wendy's Co. S'holder Derivative Action*,
    No. 16-cv-1153, 2020 WL 13169460 (S.D. Ohio Jan. 24, 2020)..............................................9

**Statutes**

Ohio Rev. Code § 1701.59(C) ....................................................................................................1, 12

Ohio Rev. Code § 1701.641(B) ..................................................................................................1, 12

Ohio Rev. Code § 1701.59(E)........................................................................................................11

Ohio Rev. Code § 1701.641(D) .....................................................................................................11

## PRELIMINARY STATEMENT

Plaintiffs achieved a remarkable $124 million settlement on behalf of nominal defendant Cardinal Health, Inc. ("Cardinal Health" or the "Company") in this derivative action. Plaintiffs alleged the Individual Defendants,[2] each a current or former member of the Cardinal Health board of directors (the "Board"), breached their fiduciary duties owed to the Company by failing to oversee the Company's distribution of prescription opioids as required by the Controlled Substances Act (the "CSA"), which allowed the Company to devise and maintain internal control systems designed to evade regulators and focus on profits over compliance. Plaintiffs alleged that the Individual Defendants ignored numerous red flags of the Company's non-compliance with the CSA and other laws, ultimately causing the Company significant financial exposure and harm from investigations and litigations by federal, state, and local governments.

While the facts are compelling, Plaintiffs' allegations that the Board is responsible to the Company for oversight failures have been described as possibly the most difficult theory in corporate law. That is particularly true in this case, where the Board was comprised predominantly of independent, non-management directors who did not personally benefit from any misconduct alleged. Plaintiffs at trial would need to prove with clear and convincing evidence that it was unreasonable for the Board to rely on management to oversee the Company's opioid anti-diversion controls despite Ohio's statutory mandate that such reliance is permitted. Ohio Rev. Code §§1701.59(C) (as to a company's directors), 1701.641(B) (as to a company's officers). The risks of losing at trial under this high burden are further illustrated by the recent trial order in *City of Huntington v. AmerisourceBergen Drug Corp.*, No. 3:17-01362, 2022 WL 2399876, at *19-20, *32-33 (S.D.W. Va. July 4, 2022), where the court ruled after trial in favor of Cardinal Health,

---

[2] Capitalized terms have the same meanings described in the Joint Declaration.

relying on the testimony of several members of Cardinal Health's compliance personnel regarding the Company's good-faith efforts to implement an effective anti-diversion program. Despite these significant factual and legal challenges, Plaintiffs prevailed in reaching a Settlement requiring Defendants to pay $124 million to the Company, making this the second largest cash derivative settlement in the history of the Sixth Circuit.

The Court preliminarily approved the Settlement on July 18, 2022. Order, ECF No. 101 at PageID 3318. Consistent with the Court's order, there has been a comprehensive notice program to advise Cardinal Health stockholders of the proposed Settlement.[3] Although the objection deadline has not yet run, there have been no objections so far, which is additional evidence of the fairness of this Settlement.

Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and that it should be approved under Fed. R. Civ. P. 23.1(c). The sizable all-cash award speaks for itself. As outlined below, each of the seven factors the Court considers supports final approval of the Settlement.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs' accompanying Joint Declaration sets out a detailed recitation of the facts and procedural background of the Action. For purposes of this Motion, Plaintiffs provide the following more concise summary.

### A.    Factual Background

Cardinal Health is one of the three largest pharmaceutical distributors and controls the second largest market share for prescription opioid distribution in the United States. Opioid

---

[3] Cardinal Health, Inc., Current Report (Form 8-K) (July 22, 2022), attached as Exhibit 7 to the Joint Declaration.

distributors such as Cardinal Health are required to adhere to the positive obligations of the federal regulatory scheme under the CSA, which requires distributors to "design and operate a system to disclose suspicious orders of controlled substances" and maintain "effective control against diversion of particular controlled substances" to non-legitimate channels, by requiring them to identify and report suspicious orders to the U.S. Drug Enforcement Agency ("DEA").  Joint Decl. ¶20.

Plaintiffs alleged that since at least 2007, the Individual Defendants knowingly ignored or otherwise failed to correct known deficiencies in Cardinal's internal controls and procedures to prevent the diversion of prescription opioids for illegal use, including by inadequately responding to repeated red flags of the Company's non-compliance with applicable law.  Joint Decl. ¶21. Specifically, in October 2008, Cardinal Health and the DEA executed a settlement agreement (the "2008 Settlement"), pursuant to which Cardinal Health agreed to pay a $34 million fine and maintain a compliance program designed to detect and prevent diversion of controlled substances in accordance with the CSA and applicable DEA regulations.  *Id*.  And again, on May 15, 2012, Cardinal Health and the DEA entered into an Administrative Memorandum of Agreement requiring the Company to maintain effective controls against diversion (the "2012 Settlement"). *Id*. In December 2016, Cardinal Health agreed to pay a civil fine of $44 million to settle the government's reserved claims for civil fines in connection with the 2012 Settlement.  *Id.*

Plaintiffs alleged that, despite these red flags, the Board continued its passive approach and failed to properly oversee the Company's opioid distribution business.  Joint Decl. ¶22.  In support of these claims Plaintiffs pointed to evidence that the Board learned of continuing compliance deficiencies through complaints filed in various actions nationwide and through Congressional investigations.  *Id*.  In addition, Plaintiffs alleged the Board, more concerned with profits than

compliance, directed efforts toward lobbying and public relations to change the narrative. *Id.* Plaintiffs also alleged the Board was aware of numerous federal cases concerning the Company's opioid distribution practices, which on December 12, 2017 were centralized and transferred to Judge Polster in the Northern District of Ohio (the "MDL").[4] *See* Joint Decl. ¶¶3, 8.

On October 21, 2019, on the eve of trial for the bellwether cases, Cardinal Health, McKesson, and AmerisourceBergen (the three largest opioid distributors) agreed to settle those cases for $215 million. Plaintiffs allege the Board was well aware of these pending trials and settlement. The trials continued thereafter and on July 21, 2021, Cardinal Health, McKesson, and AmerisourceBergen offered to settle all claims by the various States and localities in a global settlement worth up to $19.5 billion over an 18-year period, of which $6 billion will be paid by Cardinal Health (the "MDL Global Settlement"). Joint Decl. ¶58.

### B. The Litigation

This Action was initially commenced by Plaintiff Melissa Cohen in June 2019. Joint Decl. ¶6. Thereafter, plaintiffs Stanley M. Malone and Michael Splaine demanded and received Cardinal Health's internal books and records from the Company pursuant to Section 1701.37 of the Ohio Revised Code and Ohio Common Law and thereafter filed complaints in December 2019 and January 2020, respectively. *Id.* ¶¶11-14. Plaintiffs agreed to organize the cases into a single consolidated action. *Id.* ¶15.

On March 12, 2020, all three Plaintiffs filed their consolidated verified shareholder derivative complaint (the "Complaint"), which is the operative complaint in the case. Compl., ECF No. 35 at PageID 1715; Joint Decl. ¶¶11-14. The Complaint alleged breach of fiduciary duty

---

[4] *In re Nat'l Prescription Opioid Litig.*, No. 1:17-MD-2804 (N.D. Ohio).

claims for lack of oversight (Count I) and waste of corporate assets (Count II) against the Individual Defendants. *Id.* ¶4.

On June 19, 2020, Defendants filed their motion to dismiss the Complaint. Motion to Dismiss, ECF No. 43 at PageID 1821; Joint Decl. ¶23. On February 8, 2021, after briefing and argument, the Court issued an Order dismissing the Count II waste claim but denying the motion as to the Count I fiduciary duty claim (the "MTD Order"). *In re Cardinal Health, Inc. Derivative Litig.*, 518 F. Supp. 3d 1046 (S.D. Ohio 2021) (Morrison, J.); Joint Decl. ¶27. The Court subsequently entered a Preliminary Pretrial Order providing that discovery would conclude by June 30, 2022, with dispositive motions filed by August 19, 2022. Order, ECF No. 66 at PageID 2284; Joint Decl. ¶29.

The Parties engaged in a lengthy and contentious discovery process immediately following the MTD Order. *See generally* Joint Decl. ¶¶30-56. Plaintiffs ultimately obtained over 15 million pages of non-public documents relevant to the claims and defenses in the Action. *Id.* ¶54. Plaintiffs were well underway in their review of these documents, preparing witness files for anticipated depositions and establishing a narrative for Defendants' anticipated summary judgment motion when the Parties agreed to explore the possibility of negotiated resolution. *Id.* ¶¶42, 59.

### C.    Mediation and Settlement

As discovery proceeded, the Parties discussed a potential mediation with private mediators experienced in stockholder derivative litigation. Joint Decl. ¶59. The Parties agreed to retain the services of two JAMS mediators, the Hon. Daniel Weinstein (Ret.) and Jed D. Melnick, Esq. (collectively "the mediators"). *Id.* The mediators have substantial experience negotiating high stakes stockholder actions, generally, and had also recently served as mediators in *In re McKesson Corp. Derivative Litig.*, No. 4:17-cv-1850-CW (N.D. Cal. Apr. 22, 2020), a similar matter alleging director oversight claims for CSA compliance. *Id.* ¶59 & n.11. The *McKesson* case was also at a

similar procedural posture when those parties engaged in a mediation that resulted in a nine-figure settlement. *Id.* ¶¶105-106. Thus, Plaintiffs recognized that the mediators would have historical knowledge regarding the types of claims being alleged here and familiarity with many of the same insurance providers as were present in the *McKesson* action. *Id.* ¶59 n.11.

The Parties prepared and submitted detailed mediation statements and engaged in both joint and *ex parte* discussions with the mediators in advance of the mediation. Joint Decl. ¶60. On December 9, 2021, the Parties met in person for a full-day mediation in New York, where they engaged with the mediators individually and in a head-to-head argument concerning the merits of the claims and defenses moderated by the mediators and in the presence of the insurance carrier's counsel. *Id.* ¶61. After approximately 12 hours of negotiations, the Parties agreed to settle the claims for $124 million to be paid to Cardinal Health by the Individual Defendants' directors and officers ("D&O") insurance carriers. *Id.* ¶62.

After the mediation, the Parties began negotiating the terms of the release, payment mechanism, and notice program. Joint Decl. ¶63. Only after the Parties agreed to and had memorialized all material terms in the Stipulation, the Parties then negotiated a fee and expense award for Plaintiffs' Counsel to be paid out of the fund. *Id.* ¶¶65-66. That negotiation resulted in Cardinal Health's agreement to pay Plaintiffs' Counsel an "all in" fee and expense award equal to 25% of the $124 million recovery, subject to the Court's approval.[5] *Id.*

---

[5] Contemporaneously herewith, Plaintiffs have filed a Motion for an Award of Attorneys' Fees and Expenses seeking the Court's approval of Plaintiffs' fee agreement with Cardinal Health.

**ARGUMENT**

I. **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED**

Public policy strongly favors resolving stockholder derivative litigation through settlement. *See Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)[6] (finding "[s]ettlements are welcome" in shareholder derivative actions and that, "[a]bsent evidence of fraud or collusion, such settlements are not to be trifled with"). In approving a derivative settlement, the Court must determine that the proposed settlement is "fair, reasonable, and adequate." *City of Plantation Police Officers' Emps.' Ret. Sys. v. Jeffries*, No. 2:14-cv-1380, 2014 WL 7404000, at *5 (S.D. Ohio Dec. 30, 2014) (quoting Fed. R. Civ. P. 23(e)(2)). Courts consider seven factors in assessing the fairness of a derivative settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members [or, in a derivative suit, other stockholders]; and; (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011). "The principle [sic] factor to be considered in a proposed settlement is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *Jeffries*, 2014 WL 7404000, at *5.

By any measure, this $124 million Settlement, reached after a fair and vigorous bargaining process with the assistance of two highly respected mediators, is "fair, reasonable, and adequate."

---

[6] Unless otherwise noted, all emphasis is supplied and internal citations are omitted.

A.      **The Substantial Benefits for Cardinal Health Achieved by the Settlement Favor Approval**

Pursuant to the Settlement, Defendants will cause their insurers to pay $124 million in cash, less attorneys' fees, to Cardinal Health. The Settlement represents the second largest monetary recovery in any stockholder derivative action in the history of the Sixth Circuit, and the second largest cash settlement obtained on behalf of an Ohio corporation.[7]

The Settlement also compares favorably with the settlement achieved in the *McKesson* case, which was approved by Judge Wilken in April 2020 and provided for a cash payment to McKesson of $175 million, less court-awarded attorney's fees and expenses. Joint Decl. ¶¶105-106. First, the standard of proof under Delaware law in *McKesson* was lower than the "clear and convincing" standard that applied under Ohio law. *Id.* ¶74. Second, plaintiffs in *McKesson* unearthed evidence that the board was specifically aware of the Company's violations of the opioid distribution laws, while the discovery produced in this Action, in contrast, did not contain such direct evidence. Third, McKesson is larger than Cardinal Health and controls a greater market than Cardinal Health. *Id.* ¶105 n.21. Fourth, McKesson is contributing more than $1 billion more to the MDL Global Settlement than Cardinal Health is contributing. *Id.*

This record-breaking financial recovery creates an outstanding result for Cardinal Health and its public stockholders, weighing heavily in favor of final approval.[8]

---

[7] A $180 million settlement has just been approved in *Emps. Ret. Sys. of the City of St. Louis v. Jones*, No. 2:20-cv-04813-ALM-KAJ (S.D. Ohio Aug. 23, 2022) (Order, ECF No. 196 at PageID 5074), attached as Exhibit 12 to the Joint Declaration, a derivative action brought on behalf of FirstEnergy Corp.

[8] In addition to monetary remedies, as part of the MDL Global Settlement, Cardinal Health agreed to implement the MDL Governance Reforms, which will improve its corporate governance to help prevent any recurrence of the underlying conduct. Plaintiffs scrutinized the MDL Governance Reforms and agree that Cardinal's agreement to those measures should sufficiently address the risk of recurrence of the deficient practices complained of in this Action.

### B.     The Parties' Arm's-Length Mediation Process Favors Approval

The Settlement is the product of an arm's-length and fair process that included an in-person mediation session and weeks of preparation and follow-up negotiations before Judge Weinstein and Mr. Melnick, two highly experienced and respected mediators in complex, high-stakes derivative litigation.  *See generally* Joint Declaration of Daniel H. Weinstein and Jed Melnick in Connection with Proposed Stockholder Derivative Settlement ("Mediators' Decl."), attached as Exhibit 2 to the Joint Declaration; Joint Decl. ¶¶59-63.  The Parties exchanged numerous rounds of settlement demands and offers throughout the mediation session and engaged in a head-to-head factual and legal argument moderated by the mediators in the presence of counsel for the D&O carriers.  Mediators' Decl. ¶15.  After over 12 hours of negotiations at the mediation, the Parties agreed to a monetary settlement of $124 million.  *Id.*; Joint Decl. ¶62.

Where, as here, a proposed settlement is the result of arm's-length negotiations among experienced counsel, courts presume that the settlement is non-collusive.  *See, e.g.*, *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 495539, at *4 (S.D. Ohio Feb. 21, 2008) ("Courts presume the absence of fraud or collusion, unless there is evidence to the contrary").  Moreover, "[t]he participation of an independent   mediator in settlement negotiations *virtually [e]nsures* that the negotiations were conducted at  arm's length and without collusion between the parties." *In re Wendy's Co. S'holder Derivative  Action*, No. 16-cv-1153, 2020 WL 13169460, at *7 (S.D. Ohio Jan. 24, 2020) (emphasis added and alteration in original) (quoting *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008)).

In addition, the Parties separately negotiated and agreed to the proposed fee and expense award only after reaching agreement on all of the substantive terms of the Settlement.  *See Gascho v. Glob. Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *25 (S.D. Ohio Apr. 4, 2014) ("separate negotiations suggest a lower risk of collusion where, as here, relief to the class is

fair, reasonable, and adequate"); Joint Decl. ¶¶65-66. Accordingly, this factor weighs in favor of approval.

### C. The Likelihood of Success, Complexity, Expense, and Duration of Further Litigation Favors Approval

The Settlement should also be approved because it provides a substantial, immediate benefit to Cardinal Health while avoiding the substantial delays and uncertainties that would be unavoidable in further litigation. *See In re Big Lots, Inc. S'holder Litig.*, No. 2:12-cv-445, 2018 WL 11356561, at *3 (S.D. Ohio Aug. 28, 2018) ("[A]voiding the delay, risks, and costs of continued litigation against a defendant is a valid reason for counsel to recommend and for the court to approve a settlement."). The Settlement is further supported by the fact that the Parties were represented by highly qualified counsel and had the resources to vigorously contest every conceivable issue. *See Rudi v. Wexner*, No. 2:20-cv-3068, 2022 WL 1682297, at *3 (S.D. Ohio May 16, 2022) ("*L Brands*") ("There are complex issues of law that would need to be briefed and decided . . . the parties would have to engage in significant discovery, briefing for summary judgment, and possible trial and appeals. Additionally, the parties are represented by very sophisticated counsel that would undoubtedly vigorously prosecute and defend the claims in this case. This supports settlement.").

The risk-reward tradeoff also strongly supports the Settlement. Plaintiffs of course faced the risks and expenses inherent in any complex litigation, including motions for summary judgment, other pretrial challenges, battles of the experts, a lengthy trial, and post-trial litigation and appeals. "[Settlement] secures a substantial benefit . . . in a highly complex action, undiminished by further expenses, and without delay, costs, and uncertainty of protracted litigation." *In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-00249, 2009 WL 8747486, at *5 (S.D. Ohio Aug. 19, 2009). But in addition to the general risks of complex litigation, Plaintiffs here faced additional risks presented

by the high standard needed to prove director liability under Ohio law. Indeed, while Cardinal Health as a corporate entity was charged with wrongdoing in the DEA settlements and the ongoing MDL proceedings, none of the Individual Defendants were personally accused of misconduct.

When evaluating the benefit of the settlement with the risk of continued litigation, courts take careful consideration of "the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek*, 636 F.3d at 245. In other words, "in assessing the Settlement, the Court should balance the benefits afforded to [stockholders], and the *immediacy* and *certainty* of a substantial recovery for them, against Plaintiffs' likelihood for success on the merits." *Nationwide*, 2009 WL 8747486, at *2. Here, as described below and in more detail in the Joint Declaration, the risks of continued litigation far outweigh the substantial Settlement achieved.

## 1. Risks of Establishing Liability

Plaintiffs believe they had viable breach of fiduciary duty claims, but the path to a liability judgment was fraught with obstacles. While derivative claims are always challenging, the hurdle is even higher under Ohio law where "directors are personally liable to their company only where their conduct is disloyal." *Stanley v. Arnold*, No. 1:12-cv-482, 2012 WL 5269147, at *5 (S.D. Ohio Oct. 23, 2012), *aff'd*, 531 F. App'x 695 (6th Cir. 2013). Thus, to prevail Plaintiffs would need to prove by a "clear and convincing evidence" standard that the directors or officers acted or failed to act with "deliberate intent to cause injury" to Cardinal Health or with "reckless disregard" for Cardinal Health's best interests. Ohio Rev. Code §§ 1701.59(E) and 1701.641(D). Reckless disregard is "substantially greater than negligent conduct," *Anderson* v. *City of Massillon*, 983 N.E.2d 266, 267 (Ohio 2012), and requires "a perverse disregard of a known risk." *Kleemann* v. *Carriage Trace, Inc.*, No. 21873, 2007 WL 2343756, at *8 (Ohio Ct. App. Aug. 17, 2007).

Claims premised on oversight failures are "the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Keithley Instruments, Inc. Derivative Litig.*, 599 F. Supp. 2d 875, 893 n.13 (N.D. Ohio 2008).  The same is true even in jurisdictions such as Delaware with standards of proof lower than Ohio's "clear and convincing" evidence standard: oversight failure claims are "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *See In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).  And this is especially true where, as here, the board of directors is comprised of a majority of independent members who did not obtain any personal benefits from the challenged conduct and have no apparent motive to harm the Company.[9]

Defendants would argue that they were statutorily entitled to rely on "information, opinions reports, or statements" provided by others on whom they reasonably believed they could rely.  *See* Ohio Rev. Code §§ 1701.59(C) (as to a company's directors), 1701.641(B) (as to a company's officers).  That includes the Company's officers, employees, and outside consultants.  *Id.* Although Plaintiffs' Counsel believed they had strong counterarguments, the evidence demonstrated the Board did obtain information from the Company's employees hired to oversee the opioid distribution process as well as outside consultants.  For example, the Board in 2008 hired Craig Morford (a former U.S. Attorney for the Middle District of Tennessee and the Eastern District of Michigan and the former Acting U.S. Deputy Attorney General) as the Company's Chief Compliance Officer.  Morford provided regular updates to the Board on opioid related

---

[9] The Board included only one member of management, and otherwise was comprised of outside directors whose compensation was not tied to the profits of the Company.  Furthermore, Plaintiffs made no allegations that the outside directors are beholden to or have personal relationships with the Chief Executive Officer.  Thus, although Plaintiffs may be able to show that the Board was asleep at the switch, that may be insufficient to show that they acted with a "deliberate intent to cause injury" to Cardinal Health.

matters and the Company's compliance with the CSA. In addition, in 2018 the Board formed a new committee dedicated to the oversight of opioid related matters and compliance issues. These facts, coupled with the *Huntington* Court's recent decision finding that Cardinal Health's compliance personnel made good faith efforts to implement an effective anti-diversion program, would further bolster Defendant's arguments and undermine Plaintiffs' claims.

Given this, the ultimate factfinder might have found that the Cardinal Health "directors did a poor job of overseeing risk in a poorly-managed corporation," but that, alone, is not enough to establish the Board acted with reckless disregard. *In re Gen. Motors Co. Derivative Litig.*, C.A. No. 9627-VCG, 2015 WL 3958724, at *17 (Del. Ch. June 26, 2015), *aff'd*, 133 A.3d 971 (Del. 2016); *see also City of Birmingham Ret. & Relief Sys. v. Good*, 177 A.3d 47, 50-51 (Del. 2017) ("Duke Energy pled guilty to nine misdemeanor criminal violations of the Federal Clean Water Act and paid a fine exceeding $100 million. We agree . . . that the plaintiffs did not sufficiently allege that the directors faced a substantial likelihood of personal liability for a *Caremark* violation. Instead, the directors at most faced the risk of an exculpated breach of the duty of care.").

Even under circumstances where, as here, there was a prior consent decree, Delaware courts have rejected claims against directors who, in good faith, set up monitoring systems that proved inadequate to prevent new violations. *See Horman v. Abney*, C.A. No. 12290-VCS, 2017 WL 242571, at *10 (Del. Ch. Jan. 19, 2017) (discussing "the creation and implementation of a system of internal controls following UPS's acceptance of the AOD [prior agreement with the federal government].[10] The system functioned well, at least for a time, after the AOD was finalized and the Complaint makes no particularized allegation that the system was intentionally disabled

---

[10] "Ohio courts routinely look to Delaware case law for guidance in deciding corporate law issues generally[.]" *Keithley Instruments*, 599 F. Supp. 2d at 888 n.10.

or diminished within UPS. That the Plaintiffs did not turn up any Board documents specifically referencing continued compliance with the AOD during a specific time period is not sufficient to allege that the system was not in place or that the Board was simply going through the motions when overseeing compliance.").

At the pleadings stage, Plaintiffs were able to survive primarily by pointing to the recidivist behavior demonstrated by the 2008 Settlement and the 2012 Settlement, as well as the continued litigation against the Company based on its systematic failure to comply with the CSA. Specifically, Plaintiffs alleged that minutes of Board meetings after the 2008 Settlement demonstrated the Board only passively accepted information without question and without seeking change. The same held true after the 2012 Settlement and the 2016 civil penalty. As a result, Plaintiffs were able to plead that the Board was aware that the Company faced thousands of lawsuits, most of which were consolidated in the MDL proceeding, but still failed to take affirmative steps to ensure the Company's compliance systems were effective. This pattern of continued warning and no real change leading to significant liability is compelling. However, at summary judgment and trial, Defendants would have been able to put forward affirmative evidence, including their own self-serving testimony, and would have likely argued that (1) the minutes were only a partial, incomplete record of their oversight activities; and (2) they had, in any event, no "duty to take active steps affirmatively to 'monitor the monitors . . . .'" *Horman*, 2017 WL 242571, at *9. Liability would have been hotly contested, and a positive outcome for Plaintiffs was far from certain.

### 2. Risks of Collectability

One of the most important factors determining settlement value is collectability. No matter how large the judgment, what mattered to the Company was what it could collect—which was primarily a function of the available insurance, and given the amount available, the recovery in the

Settlement is very substantial.  Here, the Individual Defendants were protected by several layers of D&O insurance.  But a final, non-appealable judgment against Defendants for acting with "deliberate intent to cause injury" or "reckless disregard" might have permitted the D&O insurance carriers to invoke significant coverage defenses.  Plaintiffs did not see any realistic possibility of obtaining billions of dollars from the Individual Defendants' personal assets.  The Individual Defendants are all wealthy people by most standards but none had sufficient assets available to satisfy a ten-figure judgment.

The $124 million Settlement exhausted a substantial amount of Defendants' remaining available insurance,[11] which Plaintiffs reasonably determined represented the primary source of any recovery on the scale of the damages alleged.  Settlement Hearing and Ruling of Court, *In re Boeing Co. Derivative Litig.*, C.A. No. 2019-0907-MTZ, at 89 (Del. Ch. Feb. 23, 2022) (Exhibit 16 to Joint Declaration) ("[I]n view of the scale of Boeing's corporate loses, penalties, fines, and settlements after  the two crashes, insurance is the only source of any meaningful recovery.  The defendants are  individuals, not entities.  Their insurance policies are the deepest pocket available to Boeing and   its stockholders.").  Moreover, the amount of coverage available under the D&O policies would have decreased as the litigation continued.  Given that the Board is comprised of individuals who may not have the financial means to pay a judgment, reaching the Settlement at this juncture, and obtaining a substantial percentage of the remaining insurance coverage, was in the best interest of the Company and reduced the risk of recovering less after a verdict in Plaintiffs' favor.

---

[11] The total amount of the policies and the remaining amounts that existed at the time of the settlement are confidential.  However, those amounts can be supplied to the Court *in camera* upon request.

### D.     The Stage of the Litigation Supports Approval

The stage of the litigation supports approval. In determining whether to approve the Settlement, the Court must also consider the amount of discovery in order "[t]o insure that Plaintiff[] ha[s] had access to sufficient information to evaluate [its] case and to assess the adequacy of the proposed Settlement." *Nationwide*, 2009 WL 8747486, at *5.  As detailed in the Joint Declaration, the Settlement was achieved after extensive document discovery.

In addition to the highly relevant books and records that they obtained through pre-litigation demands, Plaintiffs received and analyzed millions of pages of documents produced by Defendants and third parties, as well as detailed interrogatory responses.  Joint Decl. ¶¶12, 54, 100.  Plaintiffs also had the benefit of reviewing transcripts of depositions and expert reports from numerous related actions involving Cardinal Health (including the MDL).  *Id.* ¶¶53, 54, 100. Additionally, Plaintiffs reviewed trial transcripts from state attorneys general actions that hotly contested Cardinal Health's role in the opioid crisis.  *Id.* ¶56.  This further educated Plaintiffs' Counsel on the strengths and weaknesses of their claims and further supports the appropriateness of the Settlement.

On this record, there can be no doubt that Plaintiffs had access  to  sufficient information to evaluate the strengths and weaknesses of their claims and make an  informed decision as to the adequacy of the Settlement.

### E.     The Support of Plaintiffs and their Experienced Counsel Favor Settlement

Counsel for all parties are highly experienced litigators in shareholder derivative actions.[12] Plaintiffs' Counsel's educated decision to settle should be given deference.  *See Bailey*, 2008 WL

---

[12] *See* Declaration of Eric L. Zagar on Behalf of Kessler Topaz Meltzer & Check, LLP in Support of Plaintiffs' Motion for an Award of Attorneys' Fee and Expenses, attached as Exhibit 8 to the Joint Declaration; Declaration of James S. Notis on Behalf of Gardy & Notis, LLP in Support of

495539, at *4 (quoting *Berry v. School Dist. of the City of Benton Harbor*, 184 F.R.D. 93, 104 (W.D. Mich. 1998)). "The Court gives significant weight to the opinions of Settling Shareholders' counsel, who have indicated that the Settlement is fair, reasonable, and adequate." *L Brands*, 2022 WL 1682297, at *4.

When, as here, significant discovery has been completed, "the Court should defer to the judgment of experienced trial counsel who has evaluated the strength of his case." *Bronson v. Bd. of Educ. of the City Sch. Dist. of the City of Cincinnati*, 604 F. Supp. 68, 73 (S.D. Ohio 1984) (citing *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)).

### F. The Reaction of Absent Stockholders Favors Final Approval

Pursuant to the Court's Order Preliminarily Approving Settlement and Authorizing Dissemination of Settlement Notice (ECF No. 101 at PageID 3309), the Company timely issued the Notice of the Settlement to stockholders.[13] The Notice provided stockholders with a detailed description of the claims and defenses in the Action and advised stockholders of their right to object to any portion of the Settlement. *Id.* Although the deadline for absent stockholders to object to the Settlement has not yet passed, to date counsel have not heard from any stockholder indicating an intention to object to the Settlement. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007) ("Generally . . . small number of objections, particularly in a class of this size, indicates that the settlement is fair, reasonable and adequate."); *Olden v. Gardner*, 294 F. App'x 210, 217

---

Plaintiffs' Motion for an Award of Attorneys' Fee and Expenses, attached as Exhibit 9 to the Joint Declaration; Declaration of Mark H. Troutman on Behalf of Gibbs Law Group LLP and Isaac Wiles & Burkholder LLC in Support of Plaintiffs' Motion for an Award of Attorneys' Fee and Expenses, attached as Exhibit 10 to the Joint Declaration; and Declaration of Richard S. Wayne on Behalf of Strauss Troy Co., LPA in Support of Plaintiffs' Motion for an Award of Attorneys' Fee and Expenses, attached as Exhibit 11 to the Joint Declaration.

[13] *See supra* note 3; Joint Decl. ¶69 & n.13.

(6th Cir. 2008) (79 objections in class of nearly 11,000 members "tends to support a finding that the settlement is fair"). Plaintiffs will report on the number of objections actually received after the September 13, 2022 deadline passes.

### G. The Public Interest Favors Approval

Amicably resolving complex actions without burdening the judicial resources of the court is always favored. *See Bailey*, 2008 WL 495539, at *4 ("There is a strong public interest in encouraging settlement of complex litigation and class-action suits because . . . settlement conserves judicial resources."). "Settlements are welcome in [derivative] cases such as this because litigation is 'notoriously difficult and unpredictable.'" *Granada*, 962 F.2d at 1205 (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *see also Nationwide*, 2009 WL 8747486, at *8 ("there is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve."). The Settlement conserves both judicial resources and the resources of Cardinal Health, the entity for which Plaintiffs brought the Action.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement under Fed. R. Civ. P. 23.1(c).

Dated: August 30, 2022

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Lee Rudy
Eric L. Zagar
280 King of Prussia Road
Radnor, PA 19087
Phone: (610) 667-7706
Fax: (610) 667-7056
Email: lrudy@ktmc.com
Email: ezagar@ktmc.com

**GIBBS LAW GROUP LLP**

*/s/Mark H. Troutman*
Mark H. Troutman (0076390)*
Trial Attorney
Shawn K. Judge (0069493)*
1111 Broadway, Suite 2100
Oakland, CA 94607
Phone: (510) 350-9700
Fax: (510) 350-9701
Email: mht@classlawgroup.com

18

*Plaintiffs' Co-Lead Counsel*

**GARDY & NOTIS, LLP**
James S. Notis
Jennifer Sarnelli
Meagan A. Farmer
126 East 56th Street, 8th Floor
New York, NY 10022
Phone: (212) 905-0509
Fax: (212) 905-0508
Email: jnotis@gardylaw.com
Email: jsarnelli@gardylaw.com
Email: mfarmer@gardylaw.com


*Plaintiffs' Co-Lead Counsel*

Email: skj@classlawgroup.com
*Working from Ohio offices

*Trial Attorney for Plaintiffs*

**STRAUSS TROY CO., LPA**
Richard S. Wayne (0022390)
William K. Flynn (0029536)
Robert R. Sparks (0073573)
150 E. Fourth Street
Cincinnati, OH 45202
Phone: (513) 621-2120
Fax: (513) 629-9426
Email: rswayne@strausstroy.com
Email: wkflynn@strausstroy.com
Email: rrsparks@strausstroy.com

*Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2022, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/Mark H. Troutman
Mark H. Troutman (0076390)
mht@classlawgroup.com
*Trial Attorney for Plaintiffs*