# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE CARDINAL HEALTH, INC. DERIVATIVE LITIGATION | Case No. 2:19-cv-2491 |
| | Judge Sarah D. Morrison |
| | Magistrate Judge Elizabeth A. Preston Deavers |

## PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM IN SUPPORT

Plaintiffs Melissa Cohen, Stanley M. Malone, and Michael Splaine (collectively, "Plaintiffs") respectfully move the Court for final approval of the Fee and Expense Award to counsel for Plaintiffs (the "Fee Motion") in connection with the settlement of the above-captioned Action (the "Settlement") as set forth in the Stipulation and Agreement of Compromise, Settlement, and Release (ECF No. 100-1 at PageID 3184) (the "Stipulation") and for entry of the [Proposed] Final Judgment and Order Approving Derivative Action Settlement (the "[Proposed] Final Approval Order") (ECF No. 100-3 at PageID 3272), attached as Exhibit A. The [Proposed] Final Approval Order: (i) grants final approval of the Settlement; and (ii) grants approval of the Fee and Expense Award. Defendants do not oppose the relief sought in this motion.

The grounds for this Fee Motion are set forth in this Memorandum and supporting declarations.[1]

---

[1] Contemporaneously herewith, Plaintiffs have filed a Joint Declaration of Eric L. Zagar and Jennifer Sarnelli in Support of Plaintiffs' Motion for Final Approval of Derivative Settlement and Application for an Award of Attorneys' Fees and Expenses ("Joint Declaration" and "Joint Decl."). The Joint Declaration attaches additional declarations from each of the Plaintiffs, Plaintiffs' Counsel, the mediators who facilitated the settlement, and David Butler, an opinion witness who provides expert opinion testimony on the reasonableness of the negotiated, unopposed attorneys' fee award.

Dated: August 30, 2022

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Lee Rudy
Eric L. Zagar
280 King of Prussia Road
Radnor, PA 19087
Phone: (610) 667-7706
Fax: (610) 667-7056
Email: lrudy@ktmc.com
Email: ezagar@ktmc.com

*Plaintiffs' Co-Lead Counsel*

**GARDY & NOTIS, LLP**
James S. Notis
Jennifer Sarnelli
Meagan A. Farmer
126 East 56th Street, 8th Floor
New York, NY 10022
Phone: (212) 905-0509
Fax: (212) 905-0508
Email: jnotis@gardylaw.com
Email: jsarnelli@gardylaw.com
Email: mfarmer@gardylaw.com

*Plaintiffs' Co-Lead Counsel*

Respectfully submitted,

**GIBBS LAW GROUP LLP**

*/s/ Mark H. Troutman*
Mark H. Troutman (0076390)*
Trial Attorney
Shawn K. Judge (0069493)*
1111 Broadway, Suite 2100
Oakland, CA 94607
Phone: (510) 350-9700
Fax: (510) 350-9701
Email: mht@classlawgroup.com
Email: skj@classlawgroup.com
*Working from Ohio offices

*Trial Attorney for Plaintiffs*

**STRAUSS TROY CO., LPA**
Richard S. Wayne (0022390)
William K. Flynn (0029536)
Robert R. Sparks (0073573)
150 E. Fourth Street
Cincinnati, OH 45202
Phone: (513) 621-2120
Fax: (513) 629-9426
Email: rswayne@strausstroy.com
Email: wkflynn@strausstroy.com
Email: rrsparks@strausstroy.com

*Liaison Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................... 1

PLAINTIFFS OBTAINED SUBSTANTIAL BENEFITS FOR THE COMPANY AND ITS STOCKHOLDERS ................................................... 2

ARGUMENT ................................................... 7

I. THE FEE AND EXPENSE AWARD IS REASONABLE, HAS BEEN AGREED TO BY CARDINAL HEALTH, AND SHOULD BE APPROVED ................................................... 7

    A. The Legal Standard Governing Fee Applications ................................................... 7

    B. The Fee and Expense Award Is Reasonable as a Percentage of the Fund ................................................... 9

    C. The *Ramey* Factors Support Approval of the Fee and Expense Award ................................................... 12

        1. The Benefits Achieved by Plaintiffs' Counsel Support the Requested Fee and Expense Award ................................................... 12

        2. The Requested Fee and Expense Award is Consistent with the Public Interest ................................................... 12

        3. Plaintiffs' Counsel Prosecuted Plaintiffs' Claims on a Purely Contingent Basis ................................................... 13

        4. Plaintiffs' Counsel's Time and Effort Support the Requested Fee and Expense Award ................................................... 14

        5. The Complexity of the Litigation Supports the Requested Fee and Expense Award ................................................... 16

        6. The Involvement of Highly Experienced Plaintiffs' Counsel Supports the Requested Fee and Expense Award ................................................... 17

II. THE REQUESTED SERVICE AWARDS ARE REASONABLE AND APPROPRIATE AND SHOULD BE APPROVED ................................................... 18

CONCLUSION ................................................... 19

# TABLE OF AUTHORITIES

**Page**

## Cases

*Arp v. Hohla & Wyss Enters., LLC*,
No. 3:18-cv-119, 2020 WL 6498956 (S.D. Ohio Nov. 5, 2020) ..............................................16

*Beard v. Dominion Homes Fin. Servs., Inc.*,
No. C2 06 137, 2009 WL 10710409 (S.D. Ohio June 3, 2009)...............................................7

*In re Big Lots, Inc. S'holder Litig.*,
No. 2:12-cv-445, 2018 WL 11356561 (S.D. Ohio Aug. 28, 2018) ........................7, 12, 14, 16

*In re Big Lots, Inc. S'holder Litig.*,
No. 2:12-cv-445 (S.D. Ohio June 28, 2018) ........................................................................14

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) ......................................................................................8

*Cabot E. Broward 2 LLC v. Cabot*,
No. 16-61218-CIV, 2018 WL 5905415 (S.D. Fla. Nov. 9, 2018) ..........................................9

*In re Cardinal Health Inc. Sec. Litig.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) .......................................................................12, 13, 16

*In re Checking Account. Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................................................10

*Clevenger v. Dillards, Inc.*,
No. C-1-02-558, 2007 WL 764291 (S.D. Ohio Mar. 9, 2007) ..................................................9

*In re Cmty. Health Sys., Inc. S'holder Derivative Litig.*,
No. 11-cv-00489 (M.D. Tenn. Jan. 17, 2017)........................................................................12

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005)....................................................................................13

*Connectivity Sys. Inc. v. Nat'l City Bank*,
No. 2:08-cv-1119, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011)...........................................14

*Dillworth v. Case Farms Processing, Inc.*,
No. 5:08-cv-1964, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010).............................................9

*Emps. Ret. Sys. of the City of St. Louis, et al. v. Jones, et al.*,
No. 2:20-cv-04813 (S.D. Ohio Aug. 23, 2022) .......................................................................2

*In re Gen. Motors ERISA Litig.*,
No. 05-71085, 2008 WL 11399729 (E.D. Mich. Sept. 15, 2008) ..........................15

*Gilbert v. Abercrombie & Fitch, Co.*,
No. 2:15-cv-2854, 2016 WL 4159682 (S.D. Ohio Aug. 5, 2016) ...........................15

*Grae v. Corr. Corp. of Am.*,
No. 3:16-cv-02267, 2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021)........................9

*Grae v. Corr. Corp. of Am.*,
No. 3:16-cv-02267 (M.D. Tenn. Sept. 24, 2021).......................................9

*Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*,
724 F.3d 713 (6th Cir. 2013) ....................................................11

*Hadix v. Johnson*,
322 F.3d 895 (6th Cir. 2003) ....................................................18

*Hale v. State Farm Mutual Auto. Ins. Co.*,
No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)...........................10

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..............................................................8

*Himmel v. Barrett*,
No. 12CVA060663, 2013 WL 4719080 (Ohio Ct. Com. Pl. July 9, 2013).............................4

*Karpik v. Huntington Bancshares Inc.*,
No. 2:17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) .........................9, 16

*In re Keithley Instruments, Inc. Derivative Litig.*,
599 F. Supp. 2d 875 (N.D. Ohio 2002)................................................13

*Lowther v. AK Steel Corp.*,
No. 1:11-cv-877, 2012 WL 6676131 (S.D. Ohio Dec. 21, 2012).........................16

*In re McKesson Corp. Derivative Litig.*,
No. 4:17-cv-1850-CW (N.D. Cal. Apr. 22, 2020) ....................................1

*Midland Funding, LLC v. Brent*,
No. 3:08-cv-1434, 2011 WL 3557020 (N.D. Ohio Aug. 12, 2011).........................9

*Moore v. Aerotek, Inc.*,
Nos. 2:15-cv-2701, 2:16-cv-1066, 2017 WL 2838148 (S.D. Ohio June 30,
2017) ........................................................................8, 9

*In re Nationwide Fin. Servs. Litig.*,
No. 2:08–cv–00249, 2009 WL 8747486 (S.D. Ohio Aug. 19, 2009)..........................8, 12, 17

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006) .............................................................9

*In re Polyurethane Foam Antitrust Litig.*,
135 F. Supp. 3d 679 (N.D. Ohio 2015) ..................................................11

*Ramey v. Cincinnati Enquirer, Inc.*,
508 F.2d 1188 (6th Cir. 1974) ................................................................8

*Rawlings v. Prudential-Bache Props, Inc.*,
9 F.3d 513 (6th Cir. 1993) ......................................................................7

*In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*,
No. 07-2784, 2016 WL 8290089 (W.D. Tenn. Aug. 2, 2016) ................9

*Rikos v. Proctor & Gamble Co.*,
No. 1:11-cv-226, 2018 WL 2009681 (S.D. Ohio Apr. 30, 2018) ...........7

*Rotondo v. JPMorgan Chase Bank, N.A.*,
No. 2:19-cv-2328, 2019 WL 6167086 (S.D. Ohio Nov. 20, 2019) .......19

*Rudi v. Wexner*,
No. 2:20-cv-3068, 2022 WL 1682297 (S.D. Ohio May 16, 2022)........7, 14, 18, 19

*Rudi v. Wexner*,
No. 2:20-cv-03068 (S.D. Ohio Dec. 14, 2021)......................................14

*Ryan v. Gifford*,
C.A. No. 2213, 2009 WL 18143 (Del. Ch. Jan. 2, 2009) .....................13

*Standard Iron Works v. ArcelorMittal*,
No. 08-C-5214, 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) ..............10

*Stanley v. Arnold*,
No. 1:12-cv-482, 2012 WL 5269147 (S.D. Ohio Oct. 23, 2012), *aff'd*, 531 F.
App'x 695 (6th Cir. 2013) .......................................................................4

*In re Syngenta AG MIR 162 Corn Litig.*,
357 F. Supp. 3d 1094 (D. Kan. 2018)....................................................10

*Worthington v. CDW Corp.*,
No. 1:03-cv-00649, 2006 WL 8411650 (S.D. Ohio May 22, 2006).......9

**Other Authorities**

Patrick Smith, *Big Law Gears Up for Likely 8-Figure Legal Battle Between
Twitter, Musk*, THE AMERICAN LAWYER (July 3, 2022) .......................15

## PRELIMINARY STATEMENT

Through their efforts in litigating and settling this Action, Plaintiffs' Counsel[2] created a $124 million fund for the benefit of Cardinal Health, Inc. ("Cardinal Health" or the "Company"). Unlike a class action, in this derivative action Cardinal Health is the ultimate beneficiary of the $124 million gross recovery. After an arm's-length negotiation, experienced counsel for Cardinal Health agreed, subject to the Court's approval, that the Company would pay 25% of this amount to Plaintiffs' Counsel, in recognition of counsel's undisputed role in creating the fund.[3]

This percentage is in line with comparable fee awards approved in the Sixth Circuit and equates to a multiplier of 3.47x on Plaintiffs' Counsel's lodestar, which is also well-supported by relevant precedent. The Fee and Expense Award is also in line with recent comparable settlements and fee awards, including the *McKesson* case, where the court approved a 25% fee in a very similar derivative action against the board of one of Cardinal Health's main competitors.[4] Finally, Plaintiffs submit the opinion witness declaration of David Butler ("Butler" or "Butler Declaration"), an experienced litigator in this Court. Butler scrutinized Plaintiffs' Counsel's time and expenses, interviewed the relevant attorneys, and examined the paper record. Butler opines that the Fee and Expense Award is "reasonable."[5] Accordingly, Plaintiffs respectfully request that this Court approve the Fee and Expense Award.[6]

---

[2] Capitalized terms have the same meanings described in the Joint Declaration.

[3] This amount includes reimbursement for Plaintiffs' Counsel's litigation expenses.

[4] *In re McKesson Corp. Derivative Litig.*, No. 4:17-cv-1850-CW (N.D. Cal. Apr. 22, 2020).

[5] Butler Declaration ¶17.

[6] All objections are due on or before September 13, 2022. Plaintiffs' Counsel will respond to any objections received.

## PLAINTIFFS OBTAINED SUBSTANTIAL BENEFITS
## FOR THE COMPANY AND ITS STOCKHOLDERS[7]

Cardinal Health will obtain a historic $124 million cash payment through the Settlement.[8] That cash payment was achieved solely as a result of the efforts of Plaintiffs' Counsel and is an outstanding outcome in the Action. The $124 million fund is the largest sole-credit[9] cash settlement ever on behalf of an Ohio corporation and the largest sole-credit cash settlement of any derivative action in the history of the Sixth Circuit. The $124 million represents the majority of Defendants' available D&O insurance, which was in Plaintiffs' Counsel's opinion the most realistic source of recovery in the Action.

Plaintiffs' Counsel devoted significant time and effort to obtaining this all-cash recovery. Before filing suit, Co-Lead Counsel conducted extensive investigations in support of their claims that the Board breached its fiduciary duties. Joint Decl. ¶¶ 8, 11-12. Cardinal Health's role in the opioid crisis was well publicized. In addition to actions by the Drug Enforcement Agency ("DEA"), the Company faced numerous lawsuits nationwide for their alleged unique role in distributing these addictive prescription drugs in a manner that was contrary to the Controlled Substances Act ("CSA"). Congressional committees similarly investigated the Company's

---

[7] For additional factual and procedural detail Plaintiffs refer the Court to the Joint Declaration.

[8] For detail concerning the Settlement, Plaintiffs refer the Court to Plaintiffs' Motion for Final Approval of Derivative Settlement and Memorandum in Support, which is being filed contemporaneously with this Fee Motion.

[9] For example, Plaintiffs here were not assisted by any special litigation committee ("SLC") formed by Cardinal Health. An SLC in a derivative case is a disinterested and independent committee formed by the corporate nominal defendant and empowered by the full board of directors to investigate and determine whether the prosecution of derivative claims is in the best interest of the corporation. For example, in a derivative action brought on behalf of FirstEnergy Corp., plaintiffs and an SLC formed by FirstEnergy jointly proposed a settlement of derivative claims for $180 million that was approved last week. *Emps. Ret. Sys. of the City of St. Louis, et al. v. Jones, et al.*, No. 2:20-cv-04813 (S.D. Ohio Aug. 23, 2022) (Order, ECF No. 196 at PageID 5074), attached as Exhibit 12 to the Joint Declaration.

practices and its impact on opioid death rates. In addition, the Company had conducted an internal investigation of its role in the distribution of opioids and published those finding on its corporate website.

Co-Lead Counsel thus had access to a wealth of public documents to review and analyze in advance of filing. Joint Decl. ¶¶8-9, 11-12. Co-Lead Counsel reviewed the DEA actions and settlement agreements to determine the wrongdoing alleged and the type of behavioral changes required as a result of the settlements. *Id.* ¶¶6, 8, 12, 21. Co-Lead Counsel also reviewed filings that had been made on the MDL[10] docket and numerous complaints filed against Cardinal Health including complaints filed by the attorneys general and municipalities and in the MDL and in other state and federal courts. *Id.* ¶¶8, 35, 56. These complaints included significant detail on the Company's distributions practices and allegations demonstrating these practices were not limited to behavior prior to 2015 but extended into the future. *Id.* ¶¶3, 8, 12. Co-Lead Counsel analyzed the supporting documents in these cases, including declarations of DEA agents who personally investigated the wrongdoing at Cardinal Health. *Id.* ¶8. Voluminous Congressional reports and testimony detailing the roles of Cardinal Health and its competitors in the opioid crisis, and news media reports about Cardinal Health's role in the opioid crisis and the status of various litigations being waged against the Company were also reviewed and analyzed. *Id.* Finally, Co-Lead Counsel reviewed Cardinal Health's side of the story through reports of a special committee of the Board to assess prior litigation demands made on the Board in

---

[10] The "MDL" refers to the proceedings in *In re National Prescription Opioid Litigation*, MDL No. 2804 (N.D. Ohio), a multi-district litigation consolidating over 1,000 actions by various state and local governments pursuing opioid-related claims against numerous defendants, including Cardinal Health.

connection with the Company's role in the opioid crisis declining to pursue claims against the Company's officers and directors, and Company filings with the SEC. *Id.*

In addition to establishing a factual record on public information, Plaintiffs dug deeper, seeking and obtaining internal corporate records Pursuant to Section 1701.37 of the Ohio Revised Code and Ohio Common Law (the "Books and Records"). Joint Decl. ¶11. The Books and Records included thousands of pages of Board-level documents, including minutes and management presentations, concerning the Company's opioid distribution practices. *Id.* 11-12. These Books and Records allowed Plaintiffs to develop an understanding of what the Board knew about the Company's opioid distribution and the actions they took (or more accurately failed to take) in connection with the Company's anti-diversion policies. *Id.*

In addition to developing the facts, Plaintiffs thoroughly investigated each member of the Board to examine their independence or lack thereof to bolster their demand futility allegations. Joint Decl. ¶ 6. They also researched the viability of breach of fiduciary duty claims based on lack of oversight under Ohio law. *Id.* ¶ 9. Counsel was aware that prior complaints against the Board for similar conduct had previously been dismissed. *Id.* ¶9; *see Himmel v. Barrett*, No. 12CVA060663, 2013 WL 4719080 (Ohio Ct. Com. Pl. July 9, 2013); *Stanley v. Arnold*, No. 1:12-cv-482, 2012 WL 5269147, at *3, *7 (S.D. Ohio Oct. 23, 2012), *aff'd*, 531 F. App'x 695 (6th Cir. 2013). Prior to filing a complaint, Co-Lead Counsel researched the basis for these dismissals and the distinguishing factors that would make their claims succeed where others had failed. *Id.*

After filing separate complaints, Plaintiffs chose to consolidate the actions and work together to prosecute the claims against the Board. Joint Decl. ¶16. On March 12, 2020, the parties filed a consolidated complaint ("Complaint"), which Defendants promptly sought to dismiss. *Id.* ¶¶18, 23. After briefing and oral argument, the Court issued an order (the "MTD Opinion"), MTD

Opinion, ECF No. 58 at PageID 2218, granting in part and denying in part the Motion to Dismiss. *Id.* ¶27.

Thereafter, the Parties engaged in protracted and contentious negotiations to obtain documents relevant to Plaintiffs' claims. As detailed in the Joint Declaration, Co-Lead Counsel engaged in numerous meet and confer calls to narrow the scope of discovery disputes and determine the most expeditious way to obtain discovery relevant to Plaintiffs' claims. Joint Decl. ¶¶30-34. Although the underlying facts revealed in the MDL were helpful to allow Plaintiffs to develop a narrative in preparation for depositions and summary judgment, the pleadings and filings in those cases focused on management or lower-level employee conduct, whereas Plaintiffs here needed to prove misconduct at the Board level. The meet and confer sessions ultimately led to the production of over 15 million pages of documents, including deposition transcripts of certain key fact witnesses, electronic communications among personnel responsible for the Company's compliance programs, and written discovery responses on behalf of the Company from cases within the MDL proceedings. *Id*. ¶54.

Co-Lead Counsel created a system, described more fully in in the Joint Declaration, for reviewing these documents in an efficient and non-duplicative fashion to ensure they could capture the best evidence to support their claims. Joint Decl. ¶¶43-51. As they prepared for depositions, and then later for mediation, Co-Lead Counsel employed a team of attorneys and support staff to conduct targeted, iterative searches of the voluminous discovery record. *Id.* This time-consuming process allowed Co-Lead Counsel to create a compelling record that the Board should have been aware of the Company's wrongdoing and should have taken steps to correct it.

On December 9, 2021, while discovery was ongoing, the Parties engaged in a full-day, in-person mediation. Joint Decl. ¶61. The Hon. Daniel Weinstein (Ret.) and Jed D. Melnick,

Esq. are among a small group of respected and experienced mediators in derivative and securities litigation. *Id.* ¶59. Among their specific qualifications, Judge Weinstein and Mr. Melnick had also previously mediated the settlement successfully reached and approved in the *McKesson* case. *Id.* ¶59 & n.11.

Plaintiffs' and Defendants' Counsel each submitted detailed mediation statements describing the merits of their claims that included references to the discovery uncovered in the litigation. Joint Decl. ¶60. The mediators held *ex parte* and joint sessions, both before and during the actual mediation. *Id.* After over 12 hours of negotiations at the mediation, the Parties reached agreement-in-principle to resolve the Action on the terms later set forth in the Stipulation. *Id.* ¶62.

There was no discussion of Plaintiffs' attorneys' fees at the mediation, except for the understanding that any attorneys' fees would be paid out of the $124 million, that the amount of fees would be negotiated *only* after all substantive terms of the settlement were documented, and that the fees would be subject to Court approval. Joint Decl. ¶65. The Parties separately negotiated the Fee and Expense Award after the Stipulation was agreed to in all other respects. *Id.* Each of the Parties had incentives to negotiate a compromise and reach agreement on the Fee and Expense Award. Had the negotiations failed, the Settlement itself would have gone forward and the Court would have ruled on a contested fee application, in which case there was the risk on both sides that the Court might have awarded more than 25%, or less than 25%, absent the Parties' agreement.

Finally, in preparing its submission to the Court, Plaintiffs' Counsel retained David Butler, a highly respected litigator and opinion witness in Ohio, to opine on the fairness of the Fee and Expense Award. Butler examined the record, interviewed several members of Plaintiffs' Counsel's teams, and reviewed Counsel's time and expense records. Butler Decl. ¶¶8-9. Based

on precedent awards, the nature and quality of the work performed, the time expended by Counsel, and the fact that Cardinal Health has agreed not to oppose the requested amount, Butler opined that the requested 25% Fee and Expense Award, generally, as well as the hourly rates and hours expended by Plaintiffs' Counsel are all "reasonable." Butler Decl. ¶¶7, 11, 13-18.

## ARGUMENT

### I. THE FEE AND EXPENSE AWARD IS REASONABLE, HAS BEEN AGREED TO BY CARDINAL HEALTH, AND SHOULD BE APPROVED

#### A. The Legal Standard Governing Fee Applications

When assessing the reasonableness of a fee petition, courts in the Sixth Circuit engage in a two-part analysis. *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 WL 2009681, at *8 (S.D. Ohio Apr. 30, 2018) (citing *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007)).

"First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach." *Id.* The preferred method is "to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Id.* (quoting *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011)); *see also Rudi v. Wexner*, No. 2:20-cv-3068, 2022 WL 1682297, at *4 (S.D. Ohio May 16, 2022) ("*L Brands*"); *In re Big Lots, Inc. S'holder Litig.*, No. 2:12-cv-445, 2018 WL 11356561, at *5 (S.D. Ohio Aug. 28, 2018).[11] The requested Fee and Expense Award, which is a

---

[11] *See also Rawlings v. Prudential-Bache Props, Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993) (recognizing that "the lodestar method has been criticized for being too time-consuming of scarce judicial resources. . . .[forcing] [d]istrict courts must pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier. With the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement" (citations omitted)). Once a percentage is calculated, courts can merely use the lodestar as a simple cross-check. *See Beard v. Dominion Homes Fin. Servs., Inc.*, No. C2 06 137, 2009 WL 10710409, at *6 (S.D.

percentage of the fund, is well within the range of 20% to 50% that is "typically" awarded in this District. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380 (S.D. Ohio 2006); *see also Moore v. Aerotek, Inc.*, Nos. 2:15-cv-2701, 2:16-cv-1066, 2017 WL 2838148, at *6 (S.D. Ohio June 30, 2017), *report and recommendation adopted*, 2017 WL 3142403 (S.D. Ohio July 25, 2017).

Second, the court must analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974):

> 1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

This Court has acknowledged that fairly and adequately compensating counsel for the work performed is crucial because "[a]bsent adequate compensation, counsel will not be willing to undertake the risk" of representative litigation. *In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-00249, 2009 WL 8747486, at *12 (S.D. Ohio Aug. 19, 2009).

Furthermore, courts have endorsed agreements where, as here, the requested Fee and Expense Award is agreed to by the Parties after an arm's-length, good faith agreement among highly qualified counsel. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). Because the Fee and Expense Award was negotiated in good faith and after all material terms of the Settlement were agreed to, due deference should be given to Co-Lead

---

Ohio June 3, 2009) (the preferred method for awarding attorneys' fees is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier).

Counsels' recommendations to enter into this aspect of the Settlement. *See Midland Funding, LLC v. Brent*, No. 3:08-cv-1434, 2011 WL 3557020, at *18 (N.D. Ohio Aug. 12, 2011).

**B.    The Fee and Expense Award Is Reasonable as a Percentage of the Fund**

Plaintiffs' Counsel obtained a remarkable benefit for the Company in a highly complex litigation on a fully contingent basis. Co-Lead Counsel's request for 25% of the Settlement is supported by precedents applying the favored "percentage of the fund" award. *See Aerotek*, 2017 WL 2838148, at *6 (recognizing that, in the Sixth Circuit, "[f]ee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created" (citations omitted)).[12]

In fact, "[d]istrict courts in the Sixth Circuit have often approved thirty percent fees." *In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*, No. 07-2784, 2016 WL 8290089, at *8 (W.D. Tenn. Aug. 2, 2016) (citations omitted). Likewise, "courts nationwide have repeatedly awarded fees of 30 percent or higher even in so-called 'megafund' settlements" of $100 million or more. *See, e.g.*, *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV, 2018 WL 5905415, at *4 (S.D. Fla. Nov. 9, 2018) ("The percentage method of awarding fees . . . is intended to mirror[]

---

[12] *See also Grae v. Corr. Corp. of Am.*, No. 3:16-cv-02267, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021); Mem. of Law in Supp. of Class Counsel's Mot. for an Award of Attys' Fees and Expenses and Award to Pl. Pursuant to 15 U.S.C. § 78u-4(a)(4), *Grae*, No. 3:16-cv-02267 (M.D. Tenn. Sept. 24, 2021) (ECF No. 469 at PageID 25019), attached as Exhibit 13 to the Joint Declaration (awarding one-third of $56 million settlement); *Worthington v. CDW Corp.*, No. 1:03-cv-00649, 2006 WL 8411650, at *6 (S.D. Ohio May 22, 2006) (finding that fee of approximately 38% "is solidly within the typical 20 to 50 percent range"); *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *13 (S.D. Ohio Feb. 18, 2021) (awarding 33.3% fee plus expenses in a class action recovery in an ERISA action); *Brent*, 2011 WL 3557020, at *19 (awarding 29% of the settlement fund); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1964, 2010 WL 776933, at *7-8 (N.D. Ohio Mar. 8, 2010) (33% of settlement amount); *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 WL 764291, at *1, *3 (S.D. Ohio Mar. 9, 2007) (29% of settlement fund); *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634 (W.D. Ky. 2006) (25% of the total settlement fund).

practice in the private marketplace where attorneys . . . regularly contract for contingent fees between 30% and 40% . . . ." (citations omitted)). Contingency fees in this range are commonplace in very large cases in several federal circuits. *See, e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1113 (D. Kan. 2018) (awarding one-third fee on $1.51 billion recovery and observing "a one-third fee is customary in contingent-fee cases"); *Hale v. State Farm Mutual Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018) (awarding one-third fee on $250 million recovery and observing "Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher"); *In re Checking Account. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1366 (S.D. Fla. 2011) (finding 30% fee on $410 million recovery "comports with customary fee awards in similar cases"); *see also, e.g.*, *Standard Iron Works v. ArcelorMittal*, No. 08-C-5214, 2014 WL 7781572, at *1 (N.D. Ill. Oct. 22, 2014) (awarding 33% fee on $163.9 million and stating "33% fee comports with the prevailing market rate for legal services of similar quality in similar cases"); *In re Vitamins Antitrust Litig.*, MISC. 99-197 (TFH), No. MDL-1285, 2001 WL34312839, at *10 (D.D.C. July 16, 2001) (34.06% fee on $359.4 million).

The Fee and Expense Award requested is also consistent with the fee award in *McKesson*. McKesson is one of Cardinal Health's primary competitors and a co-defendant in many of the MDL actions and others accusing the companies of unlawfully distributing prescription opioids. The *McKesson* action, prosecuted before Judge Wilken in the Northern District of California, was similarly settled after motions to dismiss and commencement of document discovery but prior to depositions. The *McKesson* Court approved a fee of 25% of the $175 million[13] recovery obtained,

---

[13] The disparity in settlement amounts reflects that McKesson was a larger company than Cardinal Health and also had a much larger market share. Joint Declaration ¶105 n.21.

plus out of pocket expenses.[14] This precedent of a very similar case awarding the same percentage fee strongly supports the requested Fee and Expense Award.

Finally, the fee award percentage also deserves deference because it was negotiated at arm's-length between Co-Lead Counsel and counsel for Cardinal Health, which is the real party in interest. Typically, courts considering fee petitions are motivated to look out for the interests of absent class members, who are paying the fees of class counsel. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 689 (N.D. Ohio 2015) ("[In class cases,] [t]he fee award decision must account for the reality that '[t]he interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class.'" (citing *Rawlings*, 9 F.3d at 516)); *see also Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*, 724 F.3d 713, 718 (6th Cir. 2013) ("[I]n class-action settlements the district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class . . . And that means the courts must carefully scrutinize whether those fiduciary obligations [of class counsel] have been met."). But in a derivative action such as this one, the Settlement Fund belonged to Cardinal Health, except to the extent the Company was willing to agree to pay a portion of the fund to Plaintiffs' Counsel. All of the terms of the Settlement had been set, so if the Parties failed to reach agreement on fees, the dispute would have been presented to the Court. The Court might have awarded more than 25% or less, in its discretion.[15]

---

[14] Here counsel are seeking an "all in" award rather than seeking an additional payment for their out of pocket expenses.

[15] Plaintiffs' Counsel are also seeking a fee less than their retainer agreements authorized them to seek. *See* Declarations of Melissa Cohen, Stanley M. Malone and Michael Splaine (attached as Exhibits 3, 4 and 5 to the Joint Declaration) (Plaintiffs each agreed to fees of up to one-third).

C.     The *Ramey* Factors Support Approval of the Fee and Expense Award

Analysis of each of the *Ramey* factors strongly supports the Fee and Expense Award requested here.

### 1.     The Benefits Achieved by Plaintiffs' Counsel Support the Requested Fee and Expense Award

The value of the benefit is widely regarded as the most important *Ramey* factor. *Cardinal Health*, 528 F. Supp. 2d at 764. Here, Plaintiffs' Counsel secured a Settlement creating immense monetary benefits for Cardinal Health. This represents the largest sole-credit cash Settlement in the history of the Sixth Circuit. The prior largest derivative settlement in the Sixth Circuit was for the $60 million. In that case, the Court awarded counsel for plaintiffs $20 million, or 33.3% of the monetary recovery achieved. *See* Transcript of Settlement Proceedings, *In re Cmty. Health Sys., Inc. S'holder Derivative Litig.*, No. 11-cv-00489, at 4, 9, 11 (M.D. Tenn. Jan. 17, 2017), attached as Exhibit 14 to the Joint Declaration.

### 2.     The Requested Fee and Expense Award is Consistent with the Public Interest

Rewarding attorneys who prosecute stockholder derivative actions "is important because . . . most individuals would lack the resources to litigate cases, and individual recoveries are often too small to justify the burden and expense of such litigation." *Nationwide*, 2009 WL 8747486, at *14; *see also Big Lots*, 2018 WL 11356561, at *5 (recognizing that it is in society's interest to have fiduciary laws enforced and if experienced counsel were unwilling to take on derivative lawsuits for fear of not being compensated, it would be difficult to enforce accountability for officers and directors). In order to ensure that counsel are willing to take on these cases acting as corporate watchdogs, courts should award fees that will adequately compensate private plaintiffs' attorneys. *Id.* (recognizing that it is in society's interest to have fiduciary laws enforced and that

if experienced counsel "were unwilling to take on derivative action lawsuits for fear of not being compensated, it would be more difficult to enforce accountability for officers and directors").

### 3. Plaintiffs' Counsel Prosecuted Plaintiffs' Claims on a Purely Contingent Basis

Plaintiffs' Counsel take substantial economic risks prosecuting stockholder derivative actions on a contingency basis and the third *Ramey* factor recognizes counsel should be compensated for that risk. The third *Ramey* factor "stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case." *Cardinal Health*, 528 F. Supp. 2d at 766 (citing *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1282 (S.D. Ohio 1996)). "Several courts consider the risk of non-recovery the most important factor in the fee determination." *Id.* (citations omitted). "[A]n attorney may be entitled to a much larger fee when the compensation is contingent than when it is fixed on an hourly or contractual basis." *Ryan v. Gifford*, C.A. No. 2213, 2009 WL 18143, at *13 (Del. Ch. Jan. 2, 2009).[16] This is particularly important in derivative litigation, as "[t]he complexity and societal importance of shareholder derivative and class action litigation calls for the involvement of competent counsel." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 863 (E.D. Mo. 2005). "To encourage competent attorneys to represent plaintiffs on a contingent basis in this type of fiscally and socially important litigation, attorneys' fees awarded should reflect this goal." *Id*.

Plaintiffs' Counsel undertook the prosecution of the Action on a wholly contingent basis, advancing all expenses. Plaintiffs' Counsel understood that this would be a complex and potentially expensive and lengthy litigation with no guarantee of ever being compensated for the

---

[16] "Ohio courts routinely look to Delaware case law for guidance in deciding corporate law issues generally[.]" *In re Keithley Instruments, Inc. Derivative Litig.*, 599 F. Supp. 2d 875, 888 n.10 (N.D. Ohio 2002).

work performed.  Nevertheless, Plaintiffs' Counsel vigorously prosecuted this Action for nearly three years before settling it on exceptionally favorable terms to Cardinal Health and its stockholders.  These risks, combined with the substantial benefits achieved, warrant approval of the Fee and Expense Award.

### 4. Plaintiffs' Counsel's Time and Effort Support the Requested Fee and Expense Award

The Fee and Expense Award request is reasonable when cross-checked against Plaintiffs' Counsel's lodestar, which "is used to confirm the reasonableness of the percentage of the fund award." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011) (citation omitted).  In investigating, prosecuting, and settling the Action, Plaintiffs' Counsel incurred a total lodestar of $8,865,781.00.  After deducting Counsel's unreimbursed litigation expenses of $209,471.27, the agreed-to Fee and Expense Award equates to a lodestar multiplier of 3.47x.

David Butler reviewed Plaintiffs' Counsel's daily time entries.[17]  Butler Decl. ¶9.  Butler opines that the hourly rates charged by Plaintiffs' Counsel were reasonable.  *Id.* ¶¶13-14, 18.  Plaintiffs' Counsel charged their standard hourly rates, which are within the range of hourly rates previously approved by courts in this District.  *See Big Lots*, 2018 WL 11356561, at *5 (approving hourly rates of up to $925 for partners and $650 for associates for out-of-town counsel), Declaration, *Big Lots*, No. 2:12-cv-445 (S.D. Ohio June 28, 2018) (ECF No. 122-3 at PageID 2760) (Exhibit 17 to Joint Decl.) (identifying approved hourly rates); *L Brands*, 2022 WL 1682297, at *5 (approving hourly rates of up to $1,685 for partners and $1,245 for associates), Declaration, *L Brands*, No. 2:20-cv-03068 (S.D. Ohio Dec. 14, 2021) (ECF No. 26-9 at PageID 1079-80)

---

[17] The daily time entries for each of the four Plaintiffs' firms are attached to each firm's declaration.  *See* Exhibits 8, 9, 10 and 11 to the Joint Declaration.

(Exhibit 18 to Joint Decl.) (identifying approved hourly rate); *see also Gilbert v. Abercrombie & Fitch, Co.*, No. 2:15-cv-2854, 2016 WL 4159682, at *13 (S.D. Ohio Aug. 5, 2016) (finding counsel's investigation, complexity of case, and results achieved supported reasonableness of number of hours expended by plaintiff's counsel).[18]

Butler also opines that the hours expended by Plaintiffs' Counsel were reasonable to prosecute the Action effectively. Butler Decl. ¶15. Butler noted that Plaintiffs' Counsel worked collaboratively to ensure there was no duplication of efforts. *Id.* For example, one Co-Lead Counsel firm was tasked with taking the lead on the discovery negotiations with nominal defendant Cardinal Health while another took the lead on discovery negotiations with the Individual Defendants. Joint Decl. ¶33. Co-Lead Counsel also divided the drafting of third-party subpoenas and FOIA requests. *Id.* ¶¶34, 56.

The largest amount of time spent in the action was on discovery, which was a crucial component in understanding the strength of the claims and defenses in the Action. Joint Decl. ¶¶30-56. Defendants produced over 15 million pages that had to be reviewed on a tight deadline to allow Plaintiffs' Counsel to determine what additional document discovery would be needed before the close of fact discovery. *Id.* ¶54. This monumental task could not be completed absent the assistance of contract attorneys.[19] *Id.* ¶43. Thus, Co-Lead Counsel hired a staff of highly

---

[18] Cardinal Health was primarily represented by Wachtell, Lipton, Rosen & Katz ("Wachtell") out of New York City which reportedly charges significantly more per hour than Co-Lead Counsel. *See* Patrick Smith, *Big Law Gears Up for Likely 8-Figure Legal Battle Between Twitter, Musk*, THE AMERICAN LAWYER (July 3, 2022), attached as Exhibit 15 to the Joint Declaration (noting that Wachtell partners charge "between $1,500 and $1,950 an hour while the firm's associates [bill] between $700 and $1,125 an hour").

[19] The Sixth Circuit has allowed for the use of contract attorneys in complex litigations. *See, e.g.*, *In re Gen. Motors ERISA Litig.*, No. 05-71085, 2008 WL 11399729, at *2 (E.D. Mich. Sept. 15, 2008) (in overruling an objection the court noted that the "[o]bjectors failed to establish that it was either improper or inefficient to use contract attorneys in class action cases like this or how their use warranted a lesser attorney fee award here").

specialized document reviewers to review and analyze the sizable production. *Id.* The contract attorneys were overseen by Co-Lead Counsel and met weekly with partners and associates to raise and discuss hot documents uncovered and to develop a narrative that supported the underlying case. *Id.* ¶¶44-49. All of this time was necessary and reasonable to prosecute the action. Butler Declaration ¶¶9-10, 14-15.

Butler further opines that the $31 million Fee and Expense Award (25% of the Settlement Amount) is reasonable. Butler Decl. ¶¶7, 12, 17. The lodestar multiplier of 3.47x falls well within the range of multipliers typically approved in this District and others in stockholder derivative and class action matters. *Karpik*, 2021 WL 757123, at *8 (because of the inherent risks of litigation, courts in this district award multipliers of "between approximately 2.0 and 5.0" and ultimately awarding 3.3 lodestar multiplier (citation omitted)); *see also Cardinal Health*, 528 F. Supp. 2d at 767 (approving 5.9 multiplier); *Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020) (approving 5.29 multiplier); *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving 3.06 multiplier and citing cases with multipliers ranging from 4.3 to 8.5).

### 5. The Complexity of the Litigation Supports the Requested Fee and Expense Award

Derivative actions are particularly complex and unpredictable, supporting the fifth *Ramey* factor. *Big Lots*, 2018 WL 11356561, at *3, *5. Plaintiffs' Memorandum of Law in Support of the Settlement, at 10-15, identifies a number of risks Plaintiffs faced in litigating this Action. These risks include, among other things, the difficulty of litigating director oversight claims in general, and in particular Ohio's "clear and convincing evidence" standard for director and officer breach of fiduciary duty claims; difficulties in ascertaining damages; recoverability issues based on eroding D&O insurance; and other risks inherent in complex litigation, such as motions for

summary judgment, battles of the experts, a lengthy trial, and post-trial litigation and appeals. Derivative actions involve "highly-specialized and complex areas of law, which supports the requested fee and expense award," given that such claims implicate "complex questions of law and fact, including the fiduciary duties owed by [Cardinal Health] directors to their shareholders." *Nationwide*, 2009 WL 8747486, at *15.

### 6. The Involvement of Highly Experienced Plaintiffs' Counsel Supports the Requested Fee and Expense Award

Co-Lead Counsel are highly experienced and specialized practitioners in the field of securities litigation, and the firms have long and successful track records in derivative and securities cases throughout the country, including within this District.[20] In addition, Cardinal Health and Defendants are represented by highly experienced and prestigious law firms, including Wachtell and Porter Wright Morris & Arthur LLP, which vigorously represented their clients. In the face of this experienced, formidable, and well-financed opposition, Plaintiffs' Counsel were able to successfully prosecute a case that resulted in an exceptional result for Cardinal Health and its stockholders. *See*, *e.g.*, *Nationwide*, 2009 WL 8747486, at *7, *15 (noting "highly experienced" plaintiffs' counsel, coupled with a "formidable opposition [including] very skilled and experience counsel in securities and transaction litigation, who could draw upon the exceptional resources of their nationally recognized law firm [ ] . . . [are] factor[s] that may be considered when evaluating a fee request." (citation omitted)). The mediators in their joint declaration opined:

_____

[20] *See* Declaration of Eric L. Zagar on Behalf of Kessler Topaz Meltzer & Check, LLP in Support of Plaintiffs' Motion for an Award of Attorneys' Fee and Expenses, attached as Exhibit 8 to the Joint Declaration; Declaration of James S. Notis on Behalf of Gardy & Notis, LLP in Support of Plaintiffs' Motion for an Award of Attorneys' Fee and Expenses, attached as Exhibit 9 to the Joint Declaration.

the advocacy on all sides of the case was outstanding. We have familiarity with the principal attorneys working on this case for plaintiffs, defendants, and counsel for the insurers, and observed the effort, creativity, and zeal they put into their work. We expected that they would represent their respective clients in the same manner here, as they did. All counsel displayed the highest level of professionalism in carrying out their duties on behalf of their respective clients.

Paragraph 19 of the Joint Declaration of Daniel H. Weinstein and Jed Melnick in Connection with Proposed Stockholder Derivative Settlement, attached as Exhibit 2 to the Joint Declaration.

Cardinal Health's counsel understood during the fee negotiations that because the Parties had reached agreement on all material terms of the Settlement, the Settlement would go forward regardless of whether agreement on the fee was reached. Cardinal Health's counsel further understood that in a contested fee application, Plaintiffs' Counsel could seek more than 25% and Cardinal Health could argue for less than 25%. The Parties' agreement on the Fee and Expense Award is entitled to substantial deference.

## II. THE REQUESTED SERVICE AWARDS ARE REASONABLE AND APPROPRIATE AND SHOULD BE APPROVED

Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *L Brands*, 2022 WL 1682297, at *6 (quoting *Dillworth*, 2010 WL 776933, at *7).

Here, all the Plaintiffs closely monitored and actively participated in all stages of this case, including overseeing the work of litigation counsel in this Action, receiving regular updates concerning the status of the litigation from its inception to the present, reviewing significant filings and Court orders, and overseeing settlement discussions. Each Plaintiff has submitted a

declaration detailing his or her involvement in overseeing the prosecution of this litigation.[21] Accordingly, Plaintiffs seek service awards of $2,500 for each Plaintiff for stepping forward to pursue and oversee these societally important actions.  If approved, the service awards will be paid out of the Fee and Expense Award. The approval of the requested service awards will, therefore, not reduce the total amount of the recovery received by Cardinal Health net of any Fee and Expense Award.

This request is reasonable when compared with other awards in this District.  *See, e.g.*, *L Brands*, 2022 WL 1682297, at *6 (approving $10,000 service awards to each of four representative plaintiffs); *Rotondo v. JPMorgan Chase Bank, N.A.*, No. 2:19-cv-2328, 2019 WL 6167086, at *9 (S.D. Ohio Nov. 20, 2019), *report and recommendation adopted*, 2019 WL 6496806 (S.D. Ohio Dec. 2, 2019) (approving $20,000 service award).  Plaintiffs request that the service awards be approved.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the unopposed Fee and Expense Award be approved.

Dated: August 30, 2022

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Lee Rudy
Eric L. Zagar
280 King of Prussia Road
Radnor, PA 19087
Phone: (610) 667-7706
Fax: (610) 667-7056
Email: lrudy@ktmc.com
Email: ezagar@ktmc.com

*Plaintiffs' Co-Lead Counsel*

**GIBBS LAW GROUP LLP**

*/s/Mark H. Troutman*
Mark H. Troutman (0076390)*
Trial Attorney
Shawn K. Judge (0069493)*
1111 Broadway, Suite 2100
Oakland, CA 94607
Phone: (510) 350-9700
Fax: (510) 350-9701
Email: mht@classlawgroup.com
Email: skj@classlawgroup.com

---

[21] *See* Exhibits 3, 4 and 5, attached to the Joint Declaration.

**GARDY & NOTIS, LLP**
James S. Notis
Jennifer Sarnelli
Meagan A. Farmer
126 East 56th Street, 8th Floor
New York, NY 10022
Phone: (212) 905-0509
Fax: (212) 905-0508
Email: jnotis@gardylaw.com
Email: jsarnelli@gardylaw.com
Email: mfarmer@gardylaw.com

*Plaintiffs' Co-Lead Counsel*

*Working from Ohio offices

*Trial Attorney for Plaintiffs*

**STRAUSS TROY CO., LPA**
Richard S. Wayne (0022390)
William K. Flynn (0029536)
Robert R. Sparks (0073573)
150 E. Fourth Street
Cincinnati, OH 45202
Phone: (513) 621-2120
Fax: (513) 629-9426
Email: rswayne@strausstroy.com
Email: wkflynn@strausstroy.com
Email: rrsparks@strausstroy.com

*Liaison Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2022, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/Mark H. Troutman*
Mark H. Troutman (0076390)
mht@classlawgroup.com
*Trial Attorney for Plaintiffs*
